BLANCA GUZMAN MARRERO Y OTROS
Apelantes

v.

CORPORACION DE RENOVACION URBANA Y VIVIENDA (CRUV); COMPAÑÍA DE SEGUROS X;
HAMILTON ANGLERO, ADMINISTRADOR DEL CONDOMINIO BAHIA-B; FULANO DE TAL Y
PERENCEJO DE TAL
Apelados

Núm. KLAN-96-00048

San Juan, Puerto Rico, a 18 de octubre de 1996

Panel integrado por su presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso de apelación instado en el caso de epígrafe interesa la revocación de una sentencia emitida el 28 de noviembre de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan (Pedro López Oliver, J.), copia de cuya notificación fue archivada en autos el 14 de diciembre de 1995. Mediante ésta, dicho foro declaró con lugar ciertas reclamaciones de la demanda presentada por los aquí apelantes, residentes del Condominio Bahía-B, la que fue instada contra la Corporación de Renovación Urbana y Vivienda (CRUV). Por otro lado, declaró con lugar la reconvención instada por la demandada reclamando el pago de los cánones del arrendamiento adeudados por los demandantes. Al así resolver, el tribunal de instancia acogió con aprobación e hizo formar parte de su sentencia, con ciertas modificaciones, las recomendaciones vertidas en los informes rendidos por el Comisionado Especial, Lcdo. Luis Muñiz Arguelles, ■ quien fue designado por dicho foro para entender en el litigio en tal capacidad. ■ Dictaminó así que *"la O.L.C., como administradora del edificio Bahía B y sucesora de la titular y administradora anterior, la CRUV, ■ responde por los daños causados por la falta de mantenimiento no atribuible a actos de vandalismo"*, declarando, además, su obligación de resarcir a los inquilinos por los gastos por ellos incurridos en *"[la] reparación de sus apartamentos y por los daños que la falta de dichas reparaciones haya ocasionado"*. Por otro lado, declaró con lugar la reconvención interpuesta, reconociendo así el derecho de la CRUV *"a compensar el pago de daños con las deudas de los inquilinos que no hayan pagado sus rentas, sin perjuicio de las otras acciones que puedan asistirles..."*. ■ De particular interés en la consideración de este recurso resulta ser la determinación del foro apelado de *"eximir a la O.L.C. de reparar otros daños alegados"* a ciertas áreas y elementos comunes del edificio. ■ Concluyó así que la falta de mantenimiento al Condominio Bahía-B relacionado con dichas *"fallas"* obedecía a que los daños causados eran atribuibles a actos de vandalismo y que ello operaba como un relevo de responsabilidad para la OLCCRUV. ■

Inconforme con dicho dictamen, los apelantes interpusieron el recurso que nos ocupa. En el mismo imputan, en esencia, que incidió el foro de instancia al concluir que la arrendadora no viene obligada a responder por la reparación de los elementos comunes cuyos daños fueron producidos por actos vandálicos de terceros, razón por la que *"no orden[ó] a la CRUV y o [sic] a la Oficina para la Liquidación que reparara el edificio para hacerlo habitable"*. Señalan, de igual forma, que erró el foro apelado en su determinación de que dicha parte demandada *"no responde de los daños y perjuicios que sufrieron los demandantes como consecuencia de vandalismo"*. Por último, cuestionan la indemnización concedida por concepto de sufrimientos y angustias mentales resultantes de la falta de reparaciones a los elementos comunes no atribuibles a tales actos de vandalismo, los que sí fueron reconocidos, e impugnan el dictamen del foro de instancia que declara la obligación de los apelantes de satisfacer los cánones de arrendamiento reclamados en reconvención, a pesar de que la arrendadora OLCCRUV *"incumplió con su obligación legal y contractual de mantener el edificio arrendado en condiciones habitables."* ■

Encontrándonos en condición de dictaminar, resolvemos que resulta procedente modificar la sentencia apelada para declarar la obligación de la CRUV de realizar las reparaciones necesarias en las áreas comunes del edificio para hacerlo habitable, e implícito en ello, aquella de mantener los mismos en tal condición. Resolvemos, además, que incidió el foro de instancia al relevar de responsabilidad a la CRUV por los daños resultantes por el incumplimiento de su obligación de mantener el edificio en condiciones habitables, daños que serán ahora determinados por el foro de instancia, quien en su día determinará la debida compensación por los mismos. A tales fines habremos de devolver el caso al tribunal de instancia para la continuación de los procedimientos en forma compatible con lo que a continuación habremos de exponer. Así modificada, se confirma la sentencia apelada en sus demás extremos.

Para colocar el recurso que nos ocupa en correcta perspectiva, iniciaremos con una exposición del trasfondo procesal y fáctico que dio base a la sentencia que es ahora objeto de impugnación.

## I

El caso que nos ocupa tuvo su génesis en el año de 1970, fecha para la cual las partes comparecientes en este litigio suscribieron un contrato de arrendamiento con opción a compra. ■ El objeto del mismo lo constituian los apartamientos residenciales que componen el edificio conocido como Condominio Bahía-B, ubicado en el Barrio Tras Talleres, Parada 15, Santurce, y cuyo titular era la extinta Corporación de Renovación Urbana y

Vivienda (CRUV), hoy Oficina para la Liquidación de Cuentas de la CRUV (OLCCRUV). ■

Conforme a los términos del referido contrato, la CRUV se obligó a vender las unidades de apartamientos a aquellos inquilinos que así lo solicitaren y que fueran debidamente cualificados para ello. El compromiso al que se ciñó la CRUV fue reafirmado en --y se constituyó en la parte dispositiva de-- la sentencia originada en ocasión de un pleito anterior que sobre tal obligación fue instado en 1982 en el Tribunal Superior, Sala de San Juan, contra dicha corporación pública, Civil Núm. KAC82-7109. Específicamente, dicha sentencia dispuso que *"[en] virtud de las cláusulas de dicho contrato, los demandantes solicitarán ejercer la opción de compra a que tienen derecho. La demandada evaluará las solicitudes, dentro del término de sesenta (60) días, y venderá los apartamientos a aquellos solicitantes que cualifiquen"*. ■ Por razones que no surgen claramente del expediente ante nos, las partes no llevaron a cabo ni dieron virtualidad a dicho acuerdo, suscitándose así la controversia relacionada con el cumplimiento y ejecución de dicha parte dispositiva de la referida sentencia. Esta controversia, a la que se refiere el segundo error imputado por los apelantes al alegar que *"incidió el Tribunal de Instancia al no ordenar que la parte demandada cumpliera con el contrato de arrendamiento con opción a compra"*, se encuentra hoy ante la consideración del foro de instancia que emitió dicha sentencia que es final y firme. Siendo ello así, dictaminó con corrección el foro de instancia al acoger con aprobación la recomendación del Comisionado a los efectos de diferir dicha controversia sin formular pronunciamiento alguno para permitir que la misma sea dilucidada y oportunamente adjudicada, como incidente dentro del trámite procesal del caso en el cual se emitió la misma. Con este limitado alcance no se cometió dicho error imputado, por lo que nos abstendremos de formular pronunciamiento adicional al respecto.

Aclarado el extremo antes indicado y continuando con la exposición del trasfondo que dio base a la interposición de la demanda que culminó con la sentencia ahora apelada, ante el grave estado de deterioro de los apartamentos objeto de los contratos de arrendamiento por el uso a través de los años, así como de los elementos comunes del edificio por la falta de un adecuado mantenimiento, lo que alegadamente tornaban el edificio en inhabitable, en el año 1988 un grupo de inquilinos que constituyen los aquí demandantes-apelantes incoaron la correspondiente acción judicial al respecto. ■ En la misma solicitaron como remedio el resarcimiento de los gastos por ellos incurridos en las respectivas unidades de vivienda como resultado del alegado incumplimiento por parte de la CRUV. así como indemnización por los daños, sufrimientos y angustias mentales resultantes como consecuencia de la falta de mantenimiento a las unidades individuales de vivienda, así como por la situación creada como resultado de la falta de mantenimiento y abandono de las áreas y elementos comunes del edificio. ■ Solicitaron, además, se ordenara a la CRUV que procediera a tomar las medidas correctivas necesarias y a cumplir con el contrato firmado entre las partes. ■

En apoyo a las causas de acción instadas invocaron las disposiciones pertinentes del Código Civil sobre las obligaciones dimanantes del contrato de arrendamiento; ■ las que versan sobre responsabilidad extracontractual; ■ la Ley de Alquileres Razonables; ■ así como lo resuelto en *Pereira v. I.B.E.C. y Tana Dev. Corp.*, 95 D.P.R. 28 (1967). ■

Definida como quedó la controversia luego de negar la demandada las alegaciones esenciales respecto a los daños reclamados en la demanda e instar reconvención en cobro de los cánones de arrendamiento adeudados por algunos de los inquilinos demandantes, y habiendo acontecido una serie de incidentes procesales que resulta innecesario reseñar, procedió el tribunal de instancia, con la anuencia de las partes, a emitir resolución el 22 de octubre de 1993 designando, como Comisionado Especial, al Lcdo. Luis Muñiz Arguelles. ■ Así, acorde al mandato de la Regla 41 de Procedimiento Civil, *supra*, se le encomendó al Comisionado recibir la prueba que las partes tuvieren a bien presentar en apoyo a sus respectivas contenciones, para luego rendir el correspondiente informe con sus determinaciones de hecho y conclusiones de derecho.

Aceptada como fue dicha encomienda, procedió el Comisionado, con la anuencia y total conformidad de las partes, a fraccionar el trámite para dilucidar en primer lugar todo lo referente al aspecto de negligencia y responsabilidad por parte de la demandada CRUV. Dejó así para una etapa posterior todo lo relacionado con la determinación y valoración de los daños resarcibles, si algunos.

Tras la celebración de unas 10 vistas que tuvieron lugar entre el 21 de febrero y el 24 de marzo de 1994, y de

llevarse a cabo una inspección ocular del edificio y de los apartamientos de los apelantes, el 11 de mayo de 1994 el Comisionado rindió su primer informe. En éste y en lo que respecta a las reclamaciones de los demandantes-apelantes relativos a la falta de mantenimiento de las áreas comunes, el Comisionado, a las págs. 14 a 17 de su primer informe, consignó y determinó como hechos probados lo que a continuación procedemos a transcribir:

### Los Hechos

1. Las fallas principales en el edificio Bahía B se encuentran en las áreas comunes. Estas áreas son los patios, verjas e instalaciones eléctricas y de recreación que rodean el edificio; los vestíbulos; los pasillos abiertos de cada piso, con su [sic] varandales; las instalaciones eléctricas, las tomas de agua para mangueras contra incendio; las covachas; las dos escaleras de metal a la interperie; los dos ascensores y los escapes de aire comunes que conectan a los apartamentos *("chases")*.

Del informe de los peritos, vista la credibilidad acordada a éstos y a su testimonio, y de la inspección ocular, resultan dos tipos de deficiencias: (1) aquellas producto de la falta de mantenimiento y (2) aquellas producto del vandalismo.

2. En el primer grupo se encuentran:

a) La pintura exterior, que en el lado norte está deteriorada. Lo lógico es pensar que si se pinta ese lado, se pintaría todo el edificio;

b) El empañetado de las paredes tapeadas en bloque en los vestíbulos y paredes exteriores, si es que no se rehabilitan esas áreas para usos comunes o de agencias o comercios.

c) La reconstrucción de los varandales exteriores conforme a los Reglamentos de la Junta de Planificación.

d) La instalación de los pasamanos en las escaleras de acceso conforme a los mismos Reglamentos;

e) La reparación de aproximadamente el nueve (9) por ciento de las *"huellas"* o escalones de las escaleras de metal de los pasillos exteriores;

f) La reparación y protección con cobertura de hormigón de aproximadamente el sesenta y ocho (68) por ciento de las vigas de soporte de dichas escaleras;

g) La reparación de 28 de los 392 paños de rejas de los pasillos exteriores, instalando barrotes donde éstos se hayan desprendido y soldando y reparando las puntas de contacto que estén sueltas o deterioradas.

h) La reparación de las cañerías de los dos primeros pisos por donde hay escapes de agua. (Al presente no constatamos que hubiesen escapes o desbordamientos de aguas negras. Los que hubo fueron ocasionados, en parte, por depósitos inapropiados --pañales desechables, piedras, etc.-- en el sistema de alcantarillado reparado en el 1979 y 1980).

i) La instalación de portones de rejas, con un sistema de seguridad y acceso, en los patios exteriores y en los cuartos de teléfono y otros de los vestíbulos. La instalación del portón del estacionamiento requiere que previamente se resuelva, mediante un procedimiento de deslinde, cuáles son los puntos divisorios entre los edificios Bahía A y B.

j) La reparación del extractor de los ventiladores de los baños *("chases")*, que no está operando.

k) El reparar e iluminar el área de juegos infantil y la cancha del patio norte del edificio.

l) La reparación de las tapas de las juntas de expansión del edificio y el relleno de éstas, que, por lo demás,

están en buen estado.

3. En el segundo grupo, el afectado por actos de vandalismo, se encuentran:

a) El reparar los dos ascensores

Uno de éstos, el del este, no opera desde hace varios años y el otro, el del oeste, opera media mañana y media tarde y su cabina está en estado de deterioro y no operó por más de un año, pese a que por reglamento debe operar las 24 horas del día. (Este es uno de los problemas más graves del edificio, que tiene quince (15) pisos de alto, y obviamente afecta el acceso y el disfrute de los apartamentos más altos; la salud de las personas mayores o enfermas que viven en esos pisos; el depósito de desperdicios y las posibilidades de maximizar el intercambio social entre los vecinos. Vecinos pagan a otros que les ayuden a subir la compra u otros objetos.)

b) El reparar el veintidós (22) por ciento de las luminarías e instalar bombillas en éstas en los vestíbulos y pasillos comunes;

c) El instalar focos en el área de estacionamiento, reemplazando las guirnaldas que los sustituyeron;

d) El verificar el estado de las instalaciones eléctricas expuestas, las cuales en general están en buen estado;

e) El reparar o instalar un sistema de depósito de desperdicios, que puede hacerse desde haciendo modificaciones al sistema de incineradores clausurado hasta instalando lugares de depósito de basura en cada piso para que ésta sea sacada por los elevadores por el personal de mantenimiento.

f) El instalar mangas de incendio y puertas en los gabinetes de los sistemas contra incendios o el sustituir los gabinetes no reparables por la no disponibilidad de piezas o por su estado;

g) El reparar las instalaciones de los contadores de la Autoridad de Energía Eléctrica y, con el consentimiento de ésta, el eliminar las instalaciones ilegales peligrosas y el cubrir las áreas de los contadores;

h) El instalar plafones acústicos en los vestíbulos y dependencias del primer piso;

i) El reparar las puertas vandalizadas de los buzones en el cuarto del correo, que a su vez fue separado del vestíbulo por actos de vandalismo;

j) El sellar un cuarto con un lavadero del vestíbulo;

k) El instalar puertas de metal en las covachas de los diversos pisos, junto a los ascensores;

l) El restablecer las áreas verdes y la jardinería en los patios del edificio.

Formuladas las determinaciones antes transcritas, procedió el Comisionado a concluir que *"como cuestión de lógica y de derecho, no hay dudas de que los inquilinos demandantes no tienen la obligación de reparar las áreas comunes del edificio"*, citando con corrección en apoyo de tal determinación a *Santaella Negrón v. Licari*, 83 D.P.R. 387 (1961). Ello para afirmar que ante él *"[d]esfiló amplia prueba de lo que es obvio; los residentes no controlan el presupuesto, que siempre ha estado bajo control de la CRUV y de la O.L.C."* ▬

No obstante lo antes indicado concluyó, en lo pertinente al recurso que nos ocupa, que la demandada OLCCRUV, como sucesora de la CRUV, y dueña y administradora además del Edificio Bahía B, no venía obligada a corregir las deficiencias de las áreas y elementos comunes, a su juicio atribuibles a vandalismo, relevándola, en consecuencia, de total responsabilidad por tal proceder. Se negó así a reconocer a los demandantes derecho alguno a ser indemnizados por los sufrimientos y angustias mentales resultantes de tal falta de mantenimiento. Tampoco reconoció la procedencia de los daños reclamados por la falta de seguridad. Aunque en su informe el Comisionado aceptó que no encontró apoyo jurídico alguno para así resolver *"ni en*

*Puerto Rico, ni Estados Unidos, ni España, ni en Francia",* invocó en apoyo a tal recomendación el contenido del Art. 1450 del Código Civil, 31 L.P.R.A. sec. 4057, el cual literalmente dispone que *"[e]l arrendador no está obligado a responder de la perturbación de mero hecho que un tercero causare en el uso de la finca arrendada...".* ▆ Por otro lado, reconoció que la OLCCRUV respondía por los daños y sufrimientos ocasionados por la falta de mantenimiento al edificio no atribuibles a actos de vandalismo; que la CRUV debía reembolsar a los demandantes por los gastos por ellos incurridos en las reparaciones necesarias a sus respectivos apartamientos; así como que les asistía el derecho a ser indemnizados por los daños morales que la falta de dichas reparaciones les hubiese ocasionado.

En lo que respecta a la reconvención interpuesta, declaró la misma con lugar, dictaminando que la OLCCRUV tenía derecho a compensar el pago de los daños que tendría que pagar a los demandantes con la deuda que estos tuvieren por concepto de rentas dejadas de pagar. ▆

Considerado como fue el informe parcial del Comisionado, fechado 11 de mayo de 1994 y en ausencia de oposición, el foro de instancia le impartió su aprobación . ▆

A raíz de la determinación de que la demandada OLCCRUV incurrió en negligencia en el cumplimiento de sus obligaciones contractuales con respecto a algunas de las reclamaciones de los demandantes, según ya indicado, procedió el Comisionado a dar paso a la segunda etapa de los procedimientos, ésta para la valoración de los daños compensables. En el proceso, y ante el surgimiento de un alegado nuevo daño sobre el cual no se había desfilado prueba sobre el aspecto de negligencia imputado, se celebraron dos rondas de vistas las que tuvieron lugar entre el 12 de septiembre y el 13 de octubre de 1994, y entre el 7 al 19 de diciembre de ese mismo año. En éstas se dilucidaría si procedía imponer responsabilidad a la OLCCRUV por la ocurrencia de desbordamientos de aguas negras, las que inundaron el patio e incluso varios apartamentos del Edificio Bahía-B.

En cuanto a este último extremo, el Comisionado, luego de aquilatar la prueba que tuvieron a bien aportar las partes, determinó que el problema que ocasionó los desbordamientos estaba *"localizado en los predios del Edificio Bahía A, que no pertenece a la O.L.C.".* Entendió que el problema representaba una perturbación de hecho producto de actos de terceros, lo cual *"no [faculta a los inquilinos] a reclamar del casero, pues estos [sic] tienen causas de acción independientes y directas que pueden ejercer".* ▆ En consecuencia, eximió de responsabilidad a la demandada, apoyando su conclusión, nuevamente, en las disposiciones del antes citado Art. 1450 del Código Civil, *supra.*

En lo que respecta a los alegados daños físicos reclamados por los demandantes, la prueba pericial aportada por éstos, ello mediante el testimonio del Dr. Saturnino Ortiz, versó sobre agravaciones en alergias en la piel por la existencia de asbesto; problemas respiratorios relacionados a las condiciones de salubridad, en específico con la basura, las sabandijas y el humo que en una época salía por los incineradores; los problemas de ansiedad asociados a la existencia de tales condiciones; y los daños físicos que la falta de un ascensor operacional para el uso de los residentes pudo haber causado. En la medida en que los alegados daños fueron relacionados a situaciones de falta de mantenimiento provocadas *"por actos de terceros",* el Comisionado se reiteró en su determinación previa de que la responsabilidad de las demandadas no se extiende a tales daños. ▆

En lo que respecta a la prueba médica aportada por los apelantes para establecer los daños reclamados, la misma consistió de los doctores Saturnino Ortiz y Urbano Hernández Cuesta, el primero, médico generalista, quien testificó sobre los daños físicos sufridos por los demandantes y, el segundo, psicólogo clínico, quien testificó sobre los daños psicológicos sufridos por éstos.

En lo que respecta al testimonio del Dr. Ortiz, quien declaró sobre los problemas de algunos de los demandantes como consecuencia del humo, la basura y las afecciones relacionadas con el asbesto y la falta de un ascensor operacional, concluyó el Comisionado que su testimonio resultó insuficiente para justificar la existencia de daños físicos. En cuanto a este extremo consignó en su informe final, reiterándose en su dictamen previo, *"que la responsabilidad de los demandados no se extiende a daños producidos...[por] problemas [que] son atribuibles a actos crasamente negligentes o vandálicos de terceros".* ▆ En lo que respecta al testimonio

sobre daños ocasionados por el humo, lo descartó por *"trata[rse] de una especulación general no apoyada en examen alguno"*. ■ Respecto a su testimonio con los problemas con el asbesto, su testimonio también fue descartado, ello luego de admitir que los médicos especialistas que examinaron las placas que se le tomaron a los demandantes no había diagnosticado padecimiento por exposición de asbesto, así como que sus estudios sobre asbestosis se basan en dos libros que le facilitó la representación legal de los apelantes y afirmar que el que más estudió es uno de derecho, *Asbesto: Medical Research,* de George A. Peters y Barbara J. Peters, de 1989, e indicar que conforme a su creencia, en medicina no hay estudios sobre el tema, cuando lo cierto es, según lo señaló el Comisionado, que el propio texto que utilizó el perito, hace referencia a múltiples estudios médicos que no fueron examinados por el testigo. Independientemente de ello, dicho testimonio fue controvertido por el Dr. Félix Ivan León Rivero, neumólogo y especialista en medicina interna, quien declaró como perito de la parte apelada. ■

Fue así como desmereció esta prueba pericial aportada por los apelantes, para luego concluir que la misma era insuficiente para ponerlo en condición de reconocer y conceder compensación por los daños físicos alegados. Concluyó así el Comisionado que *"no pudiendo relacionarlos, no podemos conceder remedios en daños por ellos"*. Esta parte del informe fue adoptado por el foro de instancia y ninguna razón meritoria se aduce para justificar nuestra intervención con tal apreciación de prueba.

Ahora bien, en lo que respecta a la prueba pericial aportada por el Dr. Hernández Cuesta, perito en psicología clínica, si bien es cierto que a juicio del Comisionado el examen que éste realizó a los demandantes era insuficiente, el Comisionado concluyó, no obstante, que no ponía en duda las conclusiones a las que llegó dicho perito, con la salvedad que eran *"atribuibles a actos por los cuales hemos determinado no responde la parte demandada (falta de ascensores, falta de alumbrado, sabandijas, criminalidad y aguas negras).* ■ *Con tal afirmación pasó a consignar que "acepta[ba] lo que nadie osaría negar, que los residentes viven bajo condiciones horribles y que por ello sienten frustración, depresión, temor y desconfianza, todo lo cual produce un alto grado de "estrés", hostilidad y coraje".* ■ Concluyó no obstante *"que aunque no se puede negar que los demandantes viven bajo una presión psicológica intensa y constante"*, no se podían relacionar esos daños con aquellos actos que efectivamente son atribuibles y que hemos atribuido a la culpa o a la negligencia de la CRUV o de la O.L.C. Vemos así como al abrazar y mantenerse en su dictamen previo, ningún daño concedió a los demandantes, fuera de aquellos que sí reconoció eran recobrables según ya indicado. En ellos incluyó aquellos que fueron catalogados como daños especiales, pertinentes a los gastos por ellos incurridos en reparaciones necesarias a los apartamientos alquilados, así como los daños morales que dicha falta de mantenimiento les ocasionó. Fue así como concedió a cada uno de los demandantes, en adición a los daños especiales por dichos conceptos, la cantidad de $2,000.00 a los demandantes originales y $1,000.00 a aquéllos que fueron incluidos posteriormente, por concepto de daños morales resultantes de la falta de mantenimiento a las áreas comunes no atribuibles a actos vandálicos. ■

Finalmente el Comisionado, aclarando las cuantías recobrables por los demandantes luego de declarar con lugar la reconvención interpuesta, hizo una relación indicando las cuantías netas luego de ajustar las sumas concedidas por concepto de daños al oponerles en compensación las sumas adeudadas por concepto de cánones de arrendamiento.

Presentado el informe final ante la consideración del tribunal de instancia y notificado el mismo a las partes, los apelantes presentaron objeciones al mismo el 2 de junio de 1995, ■ las que fueron remitidas por el tribunal de instancia a la atención y consideración del Comisionado. Ello dio base a un Informe Suplementario, en el que el Comisionado realizó unos ajustes mínimos, reiterándose no obstante en su recomendación inicial a los efectos de no adjudicar responsabilidad a la OLCCRUV *"por actos de terceros"*. Considerado como fue el mismo por el foro de instancia y reiterándose los apelantes en los fundamentos de impugnación por ellos levantados en lo que respecta a la conclusión del Comisionado a los efectos de que la OLCCRUV no respondía por daños o deterioro causado por actos vandálicos, *"el Tribunal aprob[ó] el primer informe del Comisionado Especial, sometido el 11 de mayo de 1994, su segundo informe de 27 de abril de 1995 y su informe suplementario de 17 de agosto de 1995, los [hizo] formar parte de la presente y dict[ó] sentencia conforme a sus términos"*. Sólo se apartó de las recomendaciones del Comisionado al descartar su sugerencia a los efectos de imponer honorarios de abogado a los demandantes; negarles todo derecho a recobrar las costas de sus peritos, imponiéndoles a su vez la

obligación de satisfacer aquéllas de los demandados; así como que se les impusiera la obligación de satisfacer la mitad de los gastos del Comisionado Especial. ▮▮▮

Habiéndose interpuesto el recurso que nos ocupa, veamos si incidió el foro de instancia al acoger la recomendación del Comisionado a los efectos de relevar a la OLCCRUV de la obligación de realizar las reparaciones necesarias a las áreas comunes del edificio para mantenerlo en condiciones habitables y relevarla de responsabilidad por los daños resultantes.

## II

Dirigiendo nuestra atención al ámbito jurídico que enmarca la controversia a que se contrae el recurso que nos ocupa, afirma el tratadista Vázquez Bote, en su obra sobre Derecho Privado Puertorriqueño, que es regla generalmente admitida que las partes que entran en una relación contractual tienen la facultad de estipular el contenido más adecuado en consideración a sus intereses. Ello no obstante, advierte que el Derecho moderno no admite una libertad absoluta, condicionando tal posibilidad a unos límites mínimos fijados por la ley o la conciencia social. Eduardo Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño,* Tomo IX, Equity, San Juan, 1992, pág. 16.

Así, el Código Civil, cuyas disposiciones contenidas en su Libro IV regulan en nuestra jurisdicción las Obligaciones y los Contratos, sec. 2991 *et seq.*, en su Art. 1207 advierte que *"[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público"*, 31 L.P.R.A. sec. 3372, razón por la que un contrato celebrado obliga *"no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley"*. Art. 1210, 31 L.P.R.A. sec. 3375. Así, se ha preceptuado que, sujeto no más a las restricciones antes expresadas, dentro de ese régimen de libertad contractual la voluntad de las partes tiene fuerza de ley, por lo que las obligaciones contractuales que de él nacen deben cumplirse al tenor de las mismas. Art. 1044, 31 L.P.R.A. sec. 2994.

Respecto del contrato de arrendamiento de cosas, el Art. 1433 de dicho cuerpo legal lo define indicando que dicho contrato es aquél en virtud del cual *"una de las partes se obliga a dar a la otra el goce o el uso de una cosa por tiempo determinado y precio cierto"*. 31 L.P.R.A. sec. 4012. Si bien de dicha definición se desprende la bilateralidad de las obligaciones contraídas, obligándose una parte a dar el goce de lo arrendado y la otra a pagar el precio acordado, el alcance de los derechos y de las obligaciones a que están sujetas las partes contratantes está dispuesto en los artículos 1444 al 1464. En lo pertinente al caso que nos ocupa, surge que entre las obligaciones del arrendador, el mismo está precisado:

*" (1) A entregar al arrendatario la cosa objeto del contrato.*

*(2) A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.*

*(3) A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato".* 31 L.P.R.A. sec. 4051."

A su vez, de manera tal que el arrendador pueda cumplir con dichas obligaciones, *"[e]l arrendatario... está obligado a poner en conocimiento del dueño, con la misma urgencia, la necesidad de todas las reparaciones comprendidas en el [antes citado] número (2) de la sec. 4051 de este título"*. Ello no obstante, las propias disposiciones de dicho artículo advierten que el arrendatario será responsable de los daños y perjuicios **que por su negligencia se ocasionaren al propietario.** (Enfasis suplido). *Id.* Asimismo, entre otros, el arrendatario viene obligado a pagar el precio del arrendamiento en los términos convenidos y a usar de la cosa arrendada como un diligente padre de familia, Art. 1445, 31 L.P.R.A. sec. 4052, disponiéndose, en consecuencia, que éste será responsable del deterioro o pérdida que tuviere la cosa arrendada, en ausencia de prueba de que ello fue ocasionado sin su culpa. 31 L.P.R.A. sec. 4060.

Respecto de los derechos de ambas partes, el Art. 1446 provee para que *"[s]i el arrendador o el arrendatario*

*no cumplieren las obligaciones expresadas [en las secs. 4051 y 4052, supra], podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente".* 31 L.P.R.A. sec. 4053. Acorde, provee el Art. 1054 que *"[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas".* (Enfasis suplido). 31 L.P.R.A. sec. 3018. Como remedio adicional, siendo las obligaciones derivadas del contrato de arrendamiento de naturaleza sinalagmática, priva el principio general de que ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia. ■ Así, nuestra jurisprudencia ha reconocido que, en situaciones apropiadas, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido *(exceptio non adimpleti contractus). Mora Dev. Corp. v. Sandín,* 118 D.P.R. 733, 742 (1987). ■

### III

Atendiendo ahora la situación particular del caso que nos ocupa, observamos que el objeto del contrato de arrendamiento suscrito entre las partes aquí comparecientes fueron unidades de vivienda, ■ compuestas por apartamientos que formaban parte de un edificio multipisos cuya titularidad permaneció en el patrimonio de la extinta CRUV, hoy OLCCRUV. Acorde, en la correcta adjudicación de este recurso, en lo pertinente resulta ineludible el análisis de los términos de dicho contrato; las características particulares de la propiedad objeto del contrato; y las acciones y remedios disponibles a las partes para el caso de incumplimiento.

Según surge de la copia del contrato de arrendamiento que se hizo formar parte del Apéndice del recurso instado, ■ bajo el acápite titulado *"EXPONEN",* la extinta CRUV, representada por la Sra. Mercedes López, se obligó a dar en arrendamiento a cada uno de los inquilinos el apartamiento descrito en su inciso PRIMERO, en el que se hacía constar su descripción y localización. Según expuesto, éstos formaban parte de la estructura conocida como Edificio Bahía B. Así, literalmente, su inciso TERCERO dispuso que *"[c]omo medida transitoria, condusente [sic] a la posible adquisición eventual, por parte del compareciente de la segunda parte, del apartamiento descrito en el hecho PRIMERO, la Corporación da a éste en arrendamiento el referido apartamiento con sujeción a las siguientes condiciones...".* ■ Bajo el acápite de *"CONDICIONES",* su cláusula DUODECIMA vuelve a reiterar que *"[l]a Corporación se obliga a vender al arrendatario el apartamiento que recibe por concepto de arrendamiento por el precio de $15,000.00, dentro de los tres meses siguientes a la fecha en que el arrendatario sea elegible y ejerza su opción a compra".* ■ Podemos así colegir que el objeto del contrato de arrendamiento lo fue cada unidad individual de apartamiento, razón por la cual forzoso es concluir que la CRUV retuvo posesión y control de las áreas de uso común del edificio, entre otras, accesos, escaleras, pasillos, elevadores, estructuras, instalaciones y equipos. Este señalamiento se hace menester toda vez que ello es determinante en el proceso de imponer responsabilidad a las partes como resultado del vínculo obligacional que los une como resultado de los contratos de arrendamiento invocados. ■ Basta aquí con señalar que en nuestra jurisdicción *"[e]s un principio general bien establecido y seguido uniformemente por la jurisprudencia que cuando un edificio consta de varios apartamentos o locales y estos [sic] se arriendan a distintos inquilinos, las entradas, vestíbulos, escaleras y pasillos de uso común quedan, salvo pacto en contrario,* ■ *en la posesión y bajo el control del arrendador, y en consecuencia la responsabilidad por su condición y seguridad descansa sobre él. El arrendador tiene el deber de velar porque tales facilidades de uso común estén en condiciones que ofrezcan seguridad tanto a los inquilinos como a las personas que legítimamente tengan acceso al edificio".* (Enfasis suplido). *Santaella Negrón v. Licari,* 83 D.P.R. 887, 892 (1961) y casos allí citados. En ausencia de un mantenimiento adecuado de dichas áreas comunes, no sería viable el uso para el cual se destinan los apartamentos o unidades que lo componen. Evidente resulta que el incumplimiento con dicho deber frustraría toda posibilidad de adecuado disfrute de las unidades, incidiendo el mismo específicamente sobre dos de las obligaciones impuéstales por ley al arrendador, según expuesto previamente: llevar a cabo **todas las reparaciones necesarias** a fin de conservar la cosa objeto del contrato en estado de servir **para el uso a que ha sido destinada,** y mantener al arrendatario **en el goce pacífico del arrendamiento.** A esta realidad responde que bajo las disposiciones de la Ley de Propiedad Horizontal, ■ dichos elementos sean catalogados como necesarios para la existencia, conservación, adecuado uso y disfrute del inmueble de que se trate. 31 L.P.R.A. sec. 1291i(h).

Veamos ahora el fundamento de derecho sobre el cual apoyó su decisión el foro apelado, para relevar a la

CRUV de su obligación de llevar a cabo las reparaciones necesarias a las áreas y elementos comunes, cuando tal necesidad origine o sea resultado de *"actos vandálicos atribuibles a terceros"*.

Preceptúa el Art. 1450 de nuestro Código Civil, 31 L.P.R.A. sec. 4057, el cual corresponde al Art. 1560 del Código Civil Español, de donde aquél proviene, que:

*"[e]l arrendador no está obligado a responder de la perturbación de mero hecho que un tercero causare en el uso de la finca arrendada; pero el arrendatario tendrá acción directa contra el perturbador. No existe perturbación de hecho cuando el tercero, ya sea la administración, ya un particular, ha obrado en virtud de un derecho que le corresponde".* (Enfasis suplido)

Varios aspectos se desprenden y se hace menester destacar de dicha disposición, pertinentes al caso que nos ocupa.

En primer lugar, dicho artículo distingue dos clases de perturbación: una de mero hecho y la otra de derecho. Así, la identificación de la clase de perturbación habida determinará, en segundo lugar, a quién corresponde repelerlas, si al arrendador o al arrendatario. Surge, además, con claridad meridiana, que el relevo que se le extiende al arrendador, está limitada a la perturbación de hecho realizada por un tercero **sobre la finca arrendada**, o sea, **el objeto del arrendamiento**. Ello es así toda vez que el control y posesión se presupone que está en manos del arrendatario, lo que justifica que se le pueda imputar dicha responsabilidad.

Por otro lado y en lo que respecta a la determinación de sobre quién debe recaer tal obligación, se ha señalado que se le adjudica al arrendatario, cuando es de mero hecho, fundado ya en la presunción de culpa que existe en su contra **por no haber tomado las precauciones necesarias para evitar las perturbaciones**, porque ello constituye un caso fortuito **no imputable al arrendador,** o ya porque al arrendatario le basta su cualidad de **poseedor de la cosa** para poder repelerlas. 2 *Nueva Enciclopedia Jurídica,* Arrendamiento, Seix, S.A., Barcelona, 1983, pág. 841.

Diferenciando ambas clases de perturbación, Castán ha aceptado el criterio de Pacifici-Mazzoni, quien al respecto *"establece la distinción diciendo que la perturbación de hecho tiene lugar cuando disminuye o impide materialmente el goce del arrendamiento, sin que el perturbador alegue derecho sobre la cosa ni sobre su disfrute; y la de derecho, si tiende al mismo fin, bien con actos judiciales, bien con actos extrajudiciales, con los que se contesta el derecho del arrendatario al disfrute aduciendo pretensiones de derecho sobre la cosa".* José Castán Tobeñas, *Derecho Civil Español, Común y Foral,* Tomo 4, 15ta. ed., Reus S.A., Madrid, 1993, pág. 315, nota al calce núm. 2.

Aplicando los principios antes reseñados a la situación particular del caso que nos ocupa, observamos que si bien los actos de vandalismo causados por terceros al Condominio Bahía B impidieron el goce material de la propiedad arrendada por la CRUV a los inquilinos demandantes —entiéndase sus apartamientos— dichos daños recayeron sobre propiedad o elementos comunes de la estructura, cuya posesión y control nunca estuvo en manos de los demandantes. Por el contrario, dicha posesión y control permaneció todo el tiempo con la arrendadora, dueña y administradora del Condominio Bahía B, la demandada CRUV, hoy OLCCRUV. Por consiguiente, forzoso es concluir que era a ésta a quien correspondía repeler tal perturbación. Al no hacerlo y, como agravante, no reparar las áreas afectadas para mantener la cosa objeto de arrendamiento —los apartamientos de un edificio multipisos— conforme a su naturaleza y al uso a que se destina, incumplió con su obligación impuéstale por ley y, por ende, con los términos del contrato suscrito por ella con sus inquilinos. Sobre el particular, resultan ilustradoras las expresiones del Tribunal Supremo en *María C. Pagán v. Estado Libre Asociado,* \_\_\_ D.P.R. \_\_\_ (1992), **92 J.T.S. 136,** a la pág. 10008, en el cual, resolviendo una cuestión similar en la que estaba en controversia la responsabilidad de la CRUV al respecto, sentenció que:

*"los actos negligentes que se alegan en la demanda, atañen al mantenimiento y conservación de los edificios objeto de este litigio, asunto que estaba bajo el control exclusivo de esta corporación. Era la C.R.U.V. la dueña de los mismos y era la responsable inmediata de la administración y el buen funcionamiento de esos proyectos a través de su Director Ejecutivo y el personal bajo su control, 17 L.P.R.A. sec. 22(a). Del descargo de la*

*responsabilidad de estos funcionarios, sólo podía quedar obligada la entidad que ellos dirigían y representaban, es decir la CRUV."*

Resolvemos, en consecuencia, que las disposiciones del antes transcrito Art. 1450, *supra*, no constituyen fundamento eximente de tal obligación, por parte de la arrendadora, por lo que incidió el tribunal de instancia al así dictaminar, acogiendo con aprobación tal criterio del Comisionado Especial. Concluimos así que en ausencia de prueba de que el deterioro o pérdida fuera causada por culpa de los arrendatarios demandantes, ▮ Art. 1453, *supra*, erró dicho foro al no ordenarle a la CRUV, hoy OLCCRUV, que procediera a hacer las reparaciones necesarias en el Condominio Bahía B, para hacerlo habitable mientras se encuentren vigentes los contratos de arrendamiento invocados. Estas deben incluir todas aquellas contenidas en el primer informe del Comisionado bajo el grupo de *"fallas principales"* debidas a *"actos de vandalismo"* en tanto y en cuanto incidan sobre el goce y disfrute de la propiedad arrendada. Por los mismos fundamentos esbozados anteriormente, entendemos que corresponde también a la OLCCRUV, y no a los inquilinos del Condominio Bahía B, instar la acción correspondiente para resolver la situación atinente al desbordamiento de aguas negras que afectó, entre otros, el patio del condominio. Véanse Informe del Comisionado e Informe Final del Comisionado, Apéndice del recurso, págs. 38-40 y 55-59, respectivamente.

Forzoso resulta también concluir que incidió el tribunal de instancia al no reconocer la procedencia de daños por concepto de las angustias y sufrimientos morales resultantes de dicho incumplimiento. En cuanto a este último extremo, toda vez que se aportó prueba ante el Comisionado sobre dichos daños, cuya existencia quedó establecida, ▮ resulta procedente remitir el caso al foro de instancia para la determinación y adjudicación de los mismos.

Atendiendo ahora los señalamientos de error mediante los cuales se impugnan las cantidades concedidas por concepto de indemnización por los sufrimientos y angustias mentales resultantes de la falta de mantenimiento en áreas comunes por las cuales sí le fue imputada responsabilidad a la demandada, surge de los autos que la adjudicación de los mismos por parte del Comisionado Especial, limitado a los extremos que entendió eran compensables, se hizo luego de escuchar el testimonio de cada demandante. Tuvo así la oportunidad de aquilatar la prueba que tuvieron a bien aportar, incluyendo aquella pericial que presentaron los demandantes. Esta prueba fue cuidadosamente analizada y discutida por el Comisionado en su informe, el que mereció luego la aprobación del foro de instancia. Hemos examinado cuidadosamente el mismo y ninguna razón encontramos que justifique nuestra intervención para alterar la apreciación que de la misma se hizo a nivel del foro de instancia, ni con la valoración de los daños que son ahora objeto de impugnación. ▮ Como bien se ha expresado, *"no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado. Esta función descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido de justicia y de conciencia humana".* *Urrutia v. A.A.A.,* 103 D.P.R. 643, 647 (1975). Por ello, de ordinario será el tribunal de instancia el que por estar en mejor posición, evaluará todos los elementos visibles e intangibles que nutren ese tipo de determinación. *Nilda Sanabria v. E.L.A.,* ___ D.P.R.___ (1993), **93 J.T.S. 24**, a la pág. 10411. Por ello, en ausencia de un dictamen imponiendo una cuantía rídiculamente baja o exageradamente alta, a la luz de la prueba sobre daños presentada, resulta improcedente intervenir con tal adjudicación para sustituir nuestro criterio por el del juzgador, ante quien declararon los testigos y *"quien está en mejor posición para evaluar todos los elementos visibles e intangibles que nutren ese tipo de determinación". Id.*

Por último, y en lo que respecta al señalamiento de error mediante el cual se cuestiona el pronunciamiento del tribunal mediante el cual se declaró con lugar la reconvención interpuesta, para ordenar así el pago de los cánones de arrendamiento adeudados, el mismo es totalmente inmeritorio. Basta con señalar que si bien en las circunstancias particulares del presente caso los demandantes pudieron haber opuesto la defensa que ahora invocan en apelación, a saber la defensa del *"exceptio non adimpleti contractus",* optaron ante el foro de instancia por reconocer dicha obligación reclamada. Así, en lo pertinente, los reclamantes alegaron que sus deudas, de existir, debían compensarse contra las sumas por las cuales entendían que debían ser resarcidos. ▮ De esta manera, quedó renunciada la defensa que ahora pretenden revivir en apelación lo que es a todas luces improcedente. Resolvemos, en consecuencia, que no se cometió este último error imputado.

## IV

Por los fundamentos antes consignados, se dicta sentencia modificando la apelada para reconocer y declarar la obligación de la CRUV, y ahora de la OLCCRUV, de realizar las reparaciones necesarias en las áreas comunes del edificio para hacerlo habitable, e implícito en ello, aquella de mantener los mismos en tal condición. Resolvemos, además, que incidió el foro de instancia al relevar de responsabilidad a la OLCCRUV por los daños resultantes por el incumplimiento de tal obligación, los que serán ahora determinados por el foro de instancia. A tales efectos se devuelve el caso al tribunal de instancia para la continuación de los procedimientos de forma consistente con lo antes resuelto.

En lo que respecta a los demás extremos de la sentencia apelada, se confirma la misma.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 96 DTA 156

**1.** La autoridad de designar un Comisionado Especial para entender en un caso presentado ante el Tribunal de Instancia surge bajo el palio de las disposiciones de la Regla 41 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, Regla 41. El nombramiento del Lcdo. Luis Muñiz Arguelles como tal comisionado se hizo el 23 de octubre de 1993 con la anuencia de las partes.

**2.** Así, a la página 6 de su sentencia, el juez de instancia informa que *"el Tribunal aprueba el primer informe del Comisionado Especial...su segundo informe...y su informe suplementario..., los hace formar parte de la presente y dicta sentencia conforme a sus términos".* Véase Sentencia, Apéndice del recurso, pág. 128.

**3.** Por virtud de la Ley Núm. 55 de 9 de agosto de 1991, 17 L.P.R.A. sec. 27 *et seq.,* se ordenó la disolución de la CRUV y se creó la Oficina para la liquidación de las cuentas de la CRUV (OLCCRUV) a cargo de un Síndico Especial. 17 L.P.R.A. sec. 27(a). Toda vez que al crearse dicha oficina se procuró que ésta sucediera a la CRUV en todos los asuntos relacionados con las obligaciones de esta última, Op. del Secretario de Justicia de Puerto Rico Núm. 22 de 30 de octubre de 1992, la OLCCRUV funge como su sucesora jurídica y como tal fue debidamente sustituida en el actual litigio.

**4.** Esta determinación surge tanto del Informe del Comisionado como de la parte dispositiva de la Sentencia.

**5.** Entre otros, el informe del Comisionado se refiere a la reparación de uno de los ascensores que esta inoperante desde hace varios años; la instalación de bombillas en los vestíbulos y pasillos comunes; la instalación de focos en el área de estacionamiento; la reparación o instalación de un sistema de depósito de desperdicios, y la instalación de mangas para combatir incendios.

**6.** Véase Sentencia, Apéndice del recurso, pág. 124. Esta determinación responde a que el foro sentenciador acogió la conclusión a la que llegó el Comisionado Especial de que la OLCCRUV no adviene responsable de efectuar las reparaciones necesarias para garantizar un disfrute y una seguridad adecuada en aquel grupo de fallas atribuibles a vandalismo. Véase, además, Informe del Comisionado, Apéndice del Recurso, Recomendaciones, pág. 46.

**7.** Véase Escrito de Apelación, Acapite V(A) y (B), pág. 9. La apelante hace un último señalamiento, imputando que *"[e]rró el Tribunal de Instancia al no ordenar que la parte demandada cumpliera con el contrato de arrendamiento con opción a compra procediendo a vender el apartamiento a los demandantes luego de hacer el estudio económico de sus ingresos familiares, lo cual tampoco ha hecho".* Véase Escrito de Apelación, págs. 9-10. Toda vez que este mismo planteamiento está ante la consideración de la sala del Tribunal de Primera Instancia cuyo dictamen originó la obligación que se pretende hacer cumplir, KAC-82-7179, nos abstendremos de hacer pronunciamiento alguno al respecto, según más adelante habremos de indicar. Véanse Sentencia Caso Civil Núm. 82-7179 y Solicitud de Ejecución de Sentencia, Apéndice de la Oposición al Recurso de Apelación, págs. 4-5 y 1-2, respectivamente.

**8.** Véase Contrato de Arrendamiento con Opción a Compra. Apéndice del recurso, págs. 131-136.

**9.** Según indicado, a virtud de las disposiciones de la Ley Núm. 55 de 1991, la OLCCRUV sustituyó en sus obligaciones a

dicha corporación de gobierno. Véase nota al calce núm. 3.

**10.** Véase Sentencia de 18 de agosto de 1987, Apéndice de la Oposición al Recurso de Apelación, pág. 4.

**11.** El 7 de septiembre de 1989, mediante Moción de Intervención [sic], se solicitó añadir a otros demandantes, a lo que accedió el foro de instancia.

**12.** En cuanto a este último extremo se alegó que uno de los dos ascensores del edificio de quince pisos se ha mantenido clausurado durante años y el otro opera sólo durante ciertas horas del día; que las escaleras que por necesidad vienen obligados a utilizar permanecen sin iluminación, ya que no se sustituyen las bombillas averiadas; la inexistencia de mangas contra incendios; el riesgo al que han sido sometidos de desarrollar enfermedades respiratorias por la presencia de asbesto en paredes altamente deterioradas; y que las condiciones de salubridad existentes han producido una invasión de ratas, sabandijas y alimañas, todo lo cual ha creado una situación en la que se alega que los inquilinos se han convertido en prisioneros en sus propias residencias, acentuada la falta de interación social por el hecho de que familiares y amigos se abstienen de visitarlos debido a las condiciones de deterioro y la falta de seguridad en que se encuentra el edificio, y los daños y angustias mentales asociados a tal situación. Véanse Demanda e Informe del Comisionado, Apéndice del Recurso, págs. 2-4, y 40-41 y Escrito de apelación, págs. 6-8, respectivamente.

**13.** Véase Demanda, Apéndice del recurso, pág. 10.

**14.** En lo Pertinente el Código Civil, en su Art. 1444, 31 L.P.R.A. sec. 4051, dispone que:

*"[e]l arrendador está obligado:*

*(1) A entregar al arrendatario la cosa objeto del contrato.*

*(2) A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.*

*(3) A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato.*

*(4) A suscribir y entregar al arrendatario un recibo por cada pago hecho por éste."*

Se provee, además, en el Art. 1446, 31 L.P.R.A. sec. 4053, que [s]i el arrendador o el arrendatario no cumplieren las obligaciones expresadas en las secs. 4051 y 4052 de este título, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente.

Por su parte. el Art. 1057, 31 L.P.R.A. sec. 3021, dispone que *"[l]a culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.*

*Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."*

**15.** En lo pertinente. el Art.1802, 31 L.P.R.A. sec. 5141, dispone que *"[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."*

**16.** En lo que respecta a la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 181 *et seq.*, debemos aquí indicar que ésta, en su Art. 4(h), 17 L P.R.A. sec. 184(b), expresamente dispone, en lo pertinente, que:

(b) No se aplicarán las disposiciones de las secs. 181 a 198 y 200 a 214a de este título a las siguientes propiedades:

(1) pertenecientes a las agencias e instrumentalidades del Gobierno de los Estados Unidos de América, del Gobierno de Puerto Rico, o de los gobiernos Municipales de Puerto Rico; disponiéndose, sin embargo, que dichas propiedades estarán sujetas a dichas disposiciones en caso de que los arrendatarios subarrenden las mismas a personas particulares.

**17.** Como es sabido, en este caso el Tribunal Supremo de Puerto Rico declaró, citando a Castán, indicó que, en general, *"es de justicia la reparación o compensación de los daños morales..."* resultantes del incumplimiento de las obligaciones.

*Pereira v. I.B.E.C. y Tana Dev. Corp., supra*, a la pág. 59. Así, cuando se alega y se prueba que los reclamantes han sufrido daños y perjuicios y sufrimientos mentales y emocionales cuya causa legal es atribuible a la negligencia en el cumplimiento de las obligaciones a las que el contrato o el derecho ciñe a la otra parte, ésta adviene responsable de compensar tales daños siempre que éstos sean previsibles. *Id.*, a las págs. 60-61.

**18.** Esto es, luego de transcurrir casi cinco (5) años de la interposición de la demanda, la que fue presentada el 12 de enero de 1969.

**19.** Véase Informe del Comisionado, Apéndice del Recurso, págs. 91 y 42.

**20.** Más adelante habremos de abordar la aplicabilidad de las disposiciones de dicho artículo al caso que nos ocupa.

**21.** Ello por virtud de las disposiciones del Art. 1119 del Codigo Civil, el cual contempla que *"[t]endrá lugar la compensación cuando dos personas, por derecho propio, sean recíprocamente acreedoras y deudoras la una de la otra".* 31 L.P.R.A. sec. 3221.

**22.** Surge de los autos, Apéndice del Recurso, págs. 48 a 51, que luego de haberle impartido el tribunal su aprobación al primer informe del Comisionado, los aquí apelantes presentaron moción el 20 de septiembre de 1994 impugnando la corrección del mismo con respecto al relevo de responsabilidad extendido a la CRUV en cuanto a la obligación de realizar reparaciones a elementos comunes afectados por actos de vandalismo. Dicha moción, mediante la cual los apelantes solicitaron *"[se] deje sin efecto [las] recomendaciones del Comisionado Especial en cuanto a que la demandada no responde por los actos de vandalismo"* fue declarada No Ha Lugar.

**23.** Véase Informe Final del Comisionado, Apéndice del recurso, pág. 58.

**24.** Véase Informe Final del Comisionado, Apéndice del recurso, pág. 59. Así, sobre la evidencia aportada al respecto, *"durante las vistas se advirtió que todo testimonio sobre daños relativos a actos que en el informe inicial se hubiese resuelto que no eran atribuibles a la culpa o negligencia de la C.R.U.V. o de la O.L.C. se entenderían correctamente objetados...y...que aun cuando esa prueba no fuese objetada, por no existir negligencia de las demandadas, no podía considerarse en una acción en daños".* *Id.*, nota al calce núm. 2, pág. 63.

**25.** Véase Informe Final del Comisionado, pág. 8, Apéndice del recurso, pág. 59.

**26.** *Id.*

**27.** Véase Informe Final del Comisionado, a las págs. 9 y 10, Apéndice del Recurso, págs. 60 y 61.

**28.** Véase Apéndice del Recurso, pág. 62.

**29.** *Id.*

**30.** La distinción se hizo a base del tiempo que cada una de estas partes vivió en el edificio, y por tanto, el tiempo que estuvieron expuestos a los daños que fueron reconocidos por el Comisionado. Por otro lado, y según ya indicado, excluyó y no reconoció los daños resultantes por la falta de mantenimiento a las áreas comunes, cuyas reparaciones eran motivadas por actos de vandalismo. En consecuencia, estimó que los únicos daños a áreas comunes atribuibles a la falta de mantenimiento de la C.R.U.V., que eran compensables, fueron los relativos a la falta de mantenimiento de las rejas de los pasillos...y la falta de mantenimiento de la cisterna de agua potable del edificio, donde, al momento de...limpiarla, aparecieron animales muertos, en estado de putrefacción. (Véase Informe Final del Comisionado, Apéndice del recurso, págs. 67-68.)

**31.** Véase Oposición Aprobación del Informe Final del Comisionado Especial, Apéndice del recurso, págs. 83-97.

**32.** Véase Sentencia, Apéndice del recurso, pág. 127.

**33.** Ello sin perjuicio de que las partes puedan acordar otra cosa, siempre que esté acorde con la ley, la moral, el orden público y las buenas costumbres.

**34.** Aunque esta regla --la que ofrece una alternativa adicional a los remedios que ofrece el Código Civil-- no aparece expresamente en sus preceptos, se ha deducido del contenido de sus Arts. 1077, 1053 y 1355. Al respecto véase la nota al

calce núm. 7 del antedicho caso.

**35.** Por supuesto, excluimos de ellas a los familiares de los contratantes que comparecen sólo como demandantes.

**36.** Se hace constar en el expediente que, a pesar de que la copia que se incluye es la correspondiente a uno de los inquilinos, la misma se consideró como modelo del contrato suscrito entre las partes, toda vez que en cada uno de ellos sólo variaban sus cirounstancias personales, el apartamiento dado en arrendamiento y el monto del canon que éste se comprometía a satisfacer a titular CRUV.

**37.** Véase Contrato de arrendamiento con opción a compra, Apéndice del recurso, pág. 131.

**38.** *Id.*, a la pág. 134.

**39.** Al respecto véase *Corchado v. Fernández Carballo,* 88 D.P.R. 100 (1963).

**40.** Es un hecho estipulado por las partes que, respecto a la responsabilidad sobre el mantenimiento de dichas areas, el derecho aplicable es lo dispuesto en el Código Civil, cuyos preceptos le imputan tal obligación a la arrendadora. (Véase Informe del Comisionado, Apéndice del recurso, pág. 35.

**41.** Ley Núm. 104 de 25 junio de 1958, según enmendada por la Ley 157 del 4 de junio de 1976, según enmendada, 31 L.P.R.A. sec. 1291, *et seq.*

**42.** Aunque en su informe final el Comisionado parece implicar que los *"actos vandálicos de terceros"* pudieron haber sido causados por los propios inquilinos, en ningún sitio del mismo determina o concluye que los demandantes, o alguno de ellos, fueran responsables por los mismos.

**43.** Véase Informe Final del Comisionado, Apéndice del recurso, pág. 67.

**44.** Debe tenerse presente que los daños reconocidos y la indemnización concedida por concepto de daños morales, estaban limitados a aquellos resultantes de la falta de mantenimiento de las rejas de los pasillos y de la cisterna de agua potable del edificio. Es decir no consideró el comisionado la procedencia de los daños morales que hemos reconocido y cuya valoración hemos ordenado. Con este limitado alcance no habremos de intervenir con los daños ya adjudicados.

**45.** Véase Informe del Comisionado, Apéndice del recurso, pág. 25. Aunque es en dicho documento en donde único encontramos esta aseveración por parte de la demandante, en su recurso de apelación ésta no refuta su veracidad, por lo que debemos tomarla como un hecho cierto.