ALEJANDRO CORCHADO, demandante y recurrido, *v.* RAMÓN FERNÁNDEZ CARBALLO, CARLOS MANUEL FERNÁNDEZ y MARYLAND CASUALTY CO., demandados y recurrentes los dos primeros.

*Número:* 185        *Resuelto:* 15 de abril de 1963

*Gaspar Gerena Bras,* abogado de los recurrentes; *Brown, Newsom & Córdova, Pablo R. Cancio, Iván Díaz de Aldrey* y *Juan F. Esteves,* abogados del recurrido; *Rivera Zayas, Rivera Cestero & Rúa,* abogados de la Maryland Casualty Company.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Los demandados, el Dr. Ramón Fernández Carballo y su hijo Carlos Manuel Fernández, eran dueños de un edificio dedicado al negocio de alquiler de locales comerciales y de oficinas, sito en Santurce, Puerto Rico. El demandante, Con-

tador Público Autorizado de profesión, tenía su oficina en dicho edificio. Mientras caminaba por el pasillo común del piso en donde tenía su oficina, el demandante se cayó sufriendo dos fracturas en su brazo derecho.

Previa demanda y juicio el Tribunal Superior declaró con lugar la demanda en cuanto a los demandados señores Fernández y sin lugar en cuanto a la codemandada Maryland Casualty Co. y condenó a los demandados Fernández a pagar solidariamente al demandante la suma de $10,000.00. Condenó al demandante a pagar las costas de la Maryland Casualty Co.

Entre otras, el tribunal a quo llegó a las siguientes conclusiones de hecho:

"6. . . . [E]l demandado Ramón Fernández Carballo como dueño y el co-demandado Carlos Manuel Fernández como Administrador, negligentemente mantenían el referido pasillo del edificio San Río en un estado peligroso para las personas que habría [sic] de utilizar el mismo debido a que éste se encontraba extremadamente resbaloso con motivo de la excesiva, indebida y negligente aplicación de cera en el piso de dicho pasillo por un empleado del demandado Ramón Fernández Carballo. Esta condición era de conocimiento del demandante."

"7. Estando el referido pasillo en las condiciones peligrosas mencionadas . . . el demandante salió de su oficina de contador público autorizado para dirigirse al cuarto del servicio sanitario y al entrar en el pasillo y dar unos pasos resbaló y sufrió una caída que le produjo serias lesiones físicas, siendo la causa próxima y directa de dicha caída y de las lesiones y daños consiguientemente sufridos por el demandante la negligencia de los demandados Ramón Fernández Carballo y Carlos Manuel Fernández al mantener negligentemente dicho pasillo en el estado resbaloso anteriormente indicado, y no habiendo intervenido en el referido accidente culpa o negligencia alguna de parte del demandante."

"8. La prueba presentada y admitida en este caso ha demostrado concluyentemente que los demandados acostumbrasen utilizar cera para el mantenimiento del indicado piso. La cera puede ser aplicada en un piso de loza de asfalto (el tipo de piso

que existía en el sitio del accidente) en forma tal que no quede resbalosa al extremo de constituir un peligro para las personas que caminan sobre el piso siempre que se aplique de acuerdo con las instrucciones del producto. Si se aplica en exceso, como ocurrió en este caso, se causa una condición peligrosa porque queda la superficie demasiado resbalosa."

"9. En ocasiones anteriores otras personas habían sufrido caídas en el segundo piso debido a la condición resbalosa del piso."

"10. La testigo Flavia Toledo, entre otras personas, le había indicado al demandado Ramón Fernández Carballo, en varias ocasiones antes del accidente, que las condiciones en que se encontraban los pisos del edificio y específicamente el segundo piso, eran peligrosas debido a la excesiva aplicación de cera sobre el mismo."

"11. El propio demandante, Sr. Alejandro Corchado, se había querellado personalmente al demandado Ramón Fernández Carballo en relación con la condición indicada del referido piso. A esto el demandado Ramón Fernández Carballo contestaba diciendo que la limpieza de los pisos se tenía que hacer en cualquier forma. Los demandados Ramón Fernández Carballo y Carlos Manuel Fernández desatendieron negligentemente las quejas y avisos por ellos recibidas en relación con el estado resbaloso del segundo piso del edificio San Río sin que hicieran nada para remediar la situación."

"12. Como consecuencia de la caída antes referida el demandante sangró considerablemente y sufrió dos fracturas en su brazo derecho, una fractura compuesta o abierta del tercio inferior del radio derecho y otra fractura del tercio inferior del cúbito derecho. Fue conducido, poco después del accidente, al Hospital San José, donde el Dr. Espinosa, especialista ortopeda, procedió a hacerle una limpieza de la herida y a tratar de reducir las fracturas por la vía cerrada, mediante manipulación, ya que dichas fracturas estaban totalmente desplazadas."

"13. El 23 de marzo de 1955 el Dr. Espinosa practicó una intervención quirúrgica al demandante, consistente en una reducción abierta de ambas fracturas. Se le fijó al demandante una varilla intramedular que todavía tiene él dentro del hueso cúbito y se le hizo además una reducción abierta de la fractura del tercio inferior del radio, fijándosele los fragmentos con alambres, los cuales todavía tiene el demandante."

"14. Como consecuencia de las fracturas referidas el demandante ha quedado con deformidad manifiesta en su brazo derecho, con desviación de la mano derecha, limitación en la muñeca de la mano derecha y limitación marcada de los movimientos de pronación y supinación, es decir giratorios. Además el demandante ha quedado con una incapacidad parcial permanente de su brazo y mano derecha, lo cual limita el funcionamiento normal de dicha mano."

"15. La incapacidad física del demandante es de carácter permanente y para extraer la varilla de metal intramedular que todavía tiene el demandante en el cúbito, será necesario someterlo a una nueva intervención quirúrgica."

Los demandados solicitan la revisión de la sentencia y señalan ocho errores. Los primeros tres y el séptimo impugnan la apreciación de la prueba que hizo el tribunal sentenciador. En el cuarto se expresa que el tribunal a quo erró "al concluir que el demandante no venía obligado a notificar por escrito a los demandados cualquier condición peligrosa aparente dentro de la propiedad arrendada de acuerdo con los términos del contrato firmado entre las partes." En el quinto se imputa error al tribunal a quo al concluir que el demandante no asumió el riesgo de los daños sufridos habiendo tenido conocimiento previo de la supuesta condición resbalosa del piso. (Los hechos ocurrieron con anterioridad a la enmienda del Art. 1802 del Código Civil hecho mediante la Ley Núm. 28 de 9 de junio de 1956, 31 L.P.R.A. sec. 5141.)

El sexto imputa error al tribunal al concluir que el demandado, Dr. Ramón Fernández Carballo, tenía conocimiento del accidente al comprar la póliza de seguros a la Maryland Casualty Co. y el relevar a dicha compañía de responsabilidad. El séptimo error señala que el tribunal erró al no concluir que la deformidad y la incapacidad parcial permanente sufrida por el demandante en su brazo derecho fueron consecuencia de una fractura sufrida anteriormente por el demandante. El octavo error señala que la cuantía de la sentencia es excesiva y confiscatoria.

■ Hemos examinado cuidadosamente la extensa transcripción de evidencia, las deposiciones, la prueba documental y hemos leído los alegatos sometidos por las representaciones profesionales del demandante, de los demandados Fernández y de la Maryland Casualty Co. Somos remisos a sostener una sentencia contra una persona por mantener un piso limpio y brillado (seríamos menos remisos si la causa del accidente fuese el haber mantenido un piso sucio y abandonado) pero aunque, como sucede usualmente en los pleitos, en este caso hay prueba contradictoria, las conclusiones del tribunal sentenciador están ampliamente sostenidas por la prueba y no siendo dichas conclusiones manifiestamente erróneas ni arbitrarias debemos aceptarlas. Por eso entendemos que los primeros tres señalamientos de error y el séptimo no se cometieron.

Aunque el demandado Dr. Fernández Carballo declaró que hacía pasarle cera al piso solamente una o dos veces al año, varios testigos—personas que trabajaban en ese edificio—declararon que se le pasaba cera al piso de los pasillos una, dos y tres veces por semana. Declararon que se le ponía cera en exceso y que el pasillo estaba casi siempre sumamente resbaloso y peligroso. Los peritos explicaron la forma correcta de aplicar la cera. Se aplica una capa fina (se trata de cera líquida); se espera que se seque; luego se pule a mano o con máquina. Los testigos de la parte demandante declararon que el muchacho que pasaba la cera vaciaba parte del líquido de una lata en el piso y luego, sin esperar a que se secase, pasaba un paño o un *mop*, dejando el piso cubierto con una capa excesivamente gruesa y resbalosa. El demandado, Dr. Fernández Carballo, negó que ese fuese el procedimiento usado y declaró que él o su hijo supervisaban la forma en que se aplicaba la cera. Al tribunal sentenciador le competía dirimir este conflicto en la prueba y aceptó las versiones que le parecieron más verosímiles y que le merecieron crédito. No tenemos razones para descartar esa apreciación.

Tampoco son erróneas las conclusiones de hecho números 14 y 15 del tribunal sentenciador, antes citadas. Es cierto que el demandante había sufrido una fractura en ese mismo brazo cuando era un adolescente. Uno de los dos peritos médicos manifestó que del estudio radiológico se apreciaba que esa primera fractura dejó alguna deformidad pero no se destruyó ni debilitó en forma alguna la prueba de que las fracturas sufridas como consecuencia de la caída que motivó este pleito tuvieron como consecuencia mayor deformidad en el brazo y una definitiva incapacidad parcial permanente.

▆ Los errores cuarto y quinto no se cometieron. El demandante, inquilino de los demandados, no asumió riesgo alguno sino que al caminar por el pasillo estaba en el ejercicio de su derecho como arrendatario, *Palmer* v. *Barreras*, 73 D.P.R. 278, 282 (1952). El peligro del piso resbaloso no era tan aparente, extraordinario u obvio que una persona razonablemente prudente hubiese rehusado caminar por el pasillo hasta que le quitasen el brillo o su propiedad resbalosa, cf. *Goose* v. *Hilton*, 79 D.P.R. 523, 528 (1956), ni allí se estaba llevando a cabo obra o reconstrucción alguna que hiciese aparente el peligro para quien por allí transitase, *Ugarte* v. *Aboy*, 52 D.P.R. 597, 600 (1938). No erró el tribunal sentenciador al concluir que el contrato de arrendamiento se refería a la "propiedad arrendada", esto es, a la oficina del demandante. Por eso el contrato no cubría la situación de autos ya que el accidente ocurrió en el pasillo. No estamos resolviendo que una cláusula de esa naturaleza en el contrato es válida; solamente estamos señalando que no cubría el caso de autos. El arrendador tiene el deber de proveerle a sus inquilinos un medio adecuado y razonablemente seguro de llegar hasta sus oficinas y apartamientos, *Prado* v. *Quiñones*, 78 D.P.R. 322, 343 (1955). Como dijimos en *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961):

"Es un principio general bien establecido y seguido uniformemente por la jurisprudencia que cuando un edificio consta de varios apartamientos o locales y estos se arriendan a distintos inquilinos, las entradas, vestíbulos, escaleras y pasillos de uso común quedan, salvo pacto en contrario, en la posesión y bajo el control del arrendador, y en consecuencia la responsabilidad por su condición y seguridad descansa sobre él. El arrendador tiene el deber de velar porque tales facilidades de uso común estén en condiciones que ofrezcan seguridad tanto a los inquilinos como a las personas que legítimamente tengan acceso al edificio."

Véase además Harper & James, *The Law of Torts*, 1956, Vol. 2, pág. 1516; Prosser, *Law of Torts*, 2da. ed., 1955, pág. 471; 25 A.L.R.2d 444.

■ Tampoco se cometió el sexto error señalado; la conclusión del tribunal está cabalmente sostenida por la prueba. Véase por ejemplo el siguiente fragmento de la deposición tomada al demandado Dr. Fernández Carballo, Exhibit 12 del demandante, págs. 11 y 12:

"P. ¿Ud. tiene una póliza de seguros para cubrir responsabilidad pública en relación con ese edificio verdad?

R. Tengo una con la Maryland Casualty Co.

P. ¿Desde qué fecha tiene esa póliza?

R. No recuerdo.

P. ¿En relación con el accidente, desde cuando la tiene, antes o después del accidente? ¿Doctor, del accidente que ocurrió a Corchado?

R. Cuando el accidente de Corchado yo estaba al descubierto; pero eso tengo que responder yo mismo.

P. ¿Al decir 'descubierto', que no tenía póliza o estaba vencida y no pagada?

R. La tenía en otra parte y me descuidé y no la pagué. Luego la puse con la Maryland.

P. ¿No recuerda, en relación con el accidente, cuando la puso, la póliza, con la Maryland, si fueron semanas, meses o poco después del accidente?

R. El mismo día.

P. ¿Después de ocurrido?

R. Sí, después de ocurrido. Entonces fuí a buscar la póliza y me di cuenta que la otra póliza que tenía, por descuido, se dejó vencer.

P. ¿Con qué compañía era la otra póliza?

R. No recuerdo.

P. ¿La tiene?

R. La tengo. Tendría que buscarla. La busqué y no estaba bien, entonces la saqué con la Maryland.

P. ¿No recuerda la compañía?

R. No recuerdo. He hecho pólizas con tantas compañía que hay.

P. ¿Era una compañía de aquí de Puerto Rico?

R. Sí señor.

P. ¿Ud. examinó esa póliza después del accidente?

R. La busqué y vi que se había vencido y saqué una nueva. Yo sabía de antemano que el accidente de Corchado iba a tenerlo que arreglar yo por mi cuenta; a contestar la demanda por mi cuenta."

Del testimonio del testigo Luis Martínez, Investigador y Ajustador de la Maryland Casualty Co. (T.E. págs. 255–256) tomamos lo siguiente:

"P.—¿Qué ocurrió?

R.—Al él decirme que el hijo del doctor lo ayudó a levantar cuando el accidente pues yo al terminar con él regresé a la oficina del doctor. Allí estaba entonces el doctor.

P.—El doctor Fernández Carballo?

R.—Sí. Entonces yo le dije a él de que su hijo y él tenían conocimiento a la hora que ocurrió el accidente y que él había ido a la compañía de seguros a sacar una póliza con conocimiento de que había ocurrido ya un accidente. Entonces yo le pedí la póliza y me dice 'tiene razón' y y me la devolvió.

P.—Le expidieron otra póliza a él?

R.—Expedimos otra póliza, en vez del día 7, con la fecha del día 8.

P.—De marzo?

R.—De marzo.

P.—Entonces él admitió a usted que tenía razón?

R.—El me admitió y me la devolvió.

P.—Le admitió que tenía conocimiento del accidente cuando sacó la póliza y le devolvió la póliza a usted?

R.—Sí señor."

No se cometió, pues, error al relevar de responsabilidad a la compañía aseguradora. 132 A.L.R. 1325.

El último y octavo error no se cometió. Dadas la naturaleza de las lesiones y la incapacidad parcial permanente que las mismas produjeron no creemos justificado alterar la cuantía.

*La sentencia dictada en este caso en 15 de junio de 1959 por el Tribunal Superior, Sala de San Juan, se confirmará.*