ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| WILFREDO FIGUEROA CANCEL, ET AL.<br><br>Parte Apelada<br><br>v.<br><br>MARCOS MORALES MARTÍNEZ, ET AL.<br><br>Parte Apelante | KLAN202500227 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: LJ2019CV00014<br><br>Sobre: Daños y Perjuicios |
| CARLOS HERNÁNDEZ GARCÍA<br><br>Parte Apelada<br><br>v.<br><br>MARCOS MORALES MARTÍNEZ, ET AL.<br><br>Parte Apelante | | Caso Núm.: MZ2019CV01777<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos[1], el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de mayo de 2025.

Compareció ante este Tribunal la parte apelante, el Sr. Víctor Rivera Bernard (en adelante, el "señor Rivera Bernard"), el Sr. Marcos Morales Martínez (en adelante, el "señor Morales Martínez") y Universal Insurance Company (en adelante, "Universal") (en adelante y en conjunto, "los Apelantes"), mediante recurso de apelación presentado el 18 de marzo de 2025. Nos solicitaron la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, el "TPI"), el 11 de febrero de 2025, notificada y archivada en autos el día 19 del mismo mes y año. A través de dicho dictamen, el TPI declaró "Ha Lugar" las Demandas interpuestas por el Sr. Wilfredo Figueroa

---

[1] Mediante la Orden Administrativa Núm. OATA-2025-068, se designó al Hon. Roberto J. Sánchez Ramos en sustitución del Hon. Félix R. Figueroa Cabán, debido al cese de funciones de este último como Juez de Apelaciones.

Cancel (en adelante, "el señor Figueroa Cancel"), el Sr. Wilfredo Figueroa Velázquez (en adelante, "el señor Figueroa Velázquez") y el Sr. Carlos Hernández García (en adelante, "el señor Hernández García") (en adelante y en conjunto, "los Apelados").

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso ante nuestra consideración inició el 26 de febrero de 2019, con la presentación de una "**Demanda**", caso núm. LJ2019CV00014, por parte del señor Figueroa Cancel y el señor Figueroa Velázquez en contra de los Apelantes, la Compañía de Seguros IHM, Liberty Puerto Rico (en adelante, "Liberty"), Chubb Insurance Company y otros codemandados desconocidos. Mediante la misma, expresaron que el 1 de marzo de 2018, alrededor de las 3:49 p.m., el señor Figueroa Cancel se encontraba fijando unas líneas de servicio telefónico de la compañía Claro en varios postes en la Carretera Núm. 116, Km. 8.17 en el Municipio de Lajas. Alegaron que, mientras el señor Figueroa Cancel laboraba, el señor Morales Martínez conducía temerariamente un camión de arrastre marca Kenworth, modelo T600, por la referida vía de rodaje a una velocidad mayor a la permitida por ley e ignorando que en dicha área se estaba instalando la infraestructura del servicio telefónico. Alegaron que, como consecuencia de lo anterior, el señor Morales Martínez impactó con el arrastre del camión perteneciente a Liberty un cable que cruzaba de lado a lado la aludida carretera. Acentuaron que el mencionado cable de fibra óptica se encontraba a una altura mucho más baja de lo normal.

De igual manera, expresaron que, el cable se estiró de tal manera que rompió el poste donde se encontraba el señor Figueroa Cancel, cayendo este último desde una altura de 25 pies y quedando inconsciente. Afirmaron que el accidente ocurrió a consecuencia de la negligencia y claro menosprecio a la vida humana demostrada por Liberty y el señor Morales Martínez. Alegaron que el señor Figueroa Cancel fue trasladado en ambulancia aérea al Centro Médico de Río Piedras donde lo operaron de la pelvis y la muñeca, ya que tuvo múltiples fracturas en dichas áreas. Especificaron que, tanto en la pelvis como en la

muñeca, le colocaron dos placas con varios tornillos. Indicaron que fue dado de alta el 14 de marzo de 2018, permaneció en reposo absoluto durante varios meses y, posteriormente, empezó a usar un andador por un periodo de cuatro a cinco meses. En vista de lo anterior, le peticionaron al Tribunal que ordenara el pago de lo siguiente: (1) $250,000 por concepto de los daños físicos sufridos por el señor Figueroa Velázquez y $150,000.00 por sus angustias mentales y (2) $150,000.00 al señor Figueroa Velázquez por las angustias mentales sufridas.

Posteriormente, el 11 de abril de 2019, el señor Rivera Bernard presentó su "**Contestación a la Demanda**" a través de la cual negó la mayoría de las reclamaciones expuestas en su contra y alegó que, cuando el señor Figueroa Cancel se trepó en el poste para colocar las líneas de la compañía de servicio telefónico, el mismo se inclinó y éste en vez de bajarse, se quedó ahí, asumiendo un riesgo irrazonable. Asimismo, señaló que no había empleados vigilando el tránsito y tampoco colocaron rótulos en la carretera para dejarle saber a los demás que estaban trabajando en dicha área. Además, aclaró que el señor Morales Martínez no manejaba a exceso de velocidad y el arrastre del camión cumplía con todas las medidas exigidas por la ley y la reglamentación vigente. Así pues, le solicitó al foro de instancia que declarara "No Ha Lugar" la "**Demanda**". Entretanto, la "**Demanda**" fue enmendada a los únicos efectos de acumular a Universal como codemandado.

El 11 de abril de 2019, la Corporación del Fondo del Seguro del Estado (en adelante, "CFSE") presentó una "**Solicitud de Intervención y Demanda de Subrogación**" mediante la cual expresó que el señor Figueroa Cancel sufrió un accidente laboral por el cual recibió tratamiento y compensación de la CFSE, por lo que solicitó la intervención y subrogación de la administradora de dicha entidad gubernamental en el presente caso. Los Apelantes presentaron sus respectivas alegaciones responsivas los días 25 de abril de 2019, 3 de mayo de 2019 y 11 de junio de 2019, respectivamente. Por su parte, el 11 de junio de 2019, Universal presentó su "**Contestación a Demanda Enmendada**" en la que reiteró los argumentos presentados por el señor Rivera Bernard.

Posteriormente, el 11 de octubre de 2019, el señor Hernández García presentó una "**Demanda**" sobre daños y perjuicios en contra de los Apelantes,

bajo el caso núm. MZ2019CV01777. A través de la misma, expresó que el 1 de marzo de 2018 se encontraba laborando junto a unos compañeros de la compañía Claro en la Carretera Núm. 116, Km. 8.17 en el Municipio de Lajas. Especificó que su trabajo consistía en brindarle asistencia al señor Figueroa Cancel en la fijación de líneas de servicio telefónico en postes. Indicó que colocó conos anaranjados y estacionó tres guaguas en el paseo de la carretera en cada punto de trabajo, lo cual le hacía saber a las personas que se estaban efectuando labores en el lugar. Además, destacó que llevaba puesto un chaleco anaranjado mientras velaba el tránsito. De igual manera, alegó que le hizo señas al señor Morales Martínez e intentó todo lo posible para que bajara la velocidad del camión. Añadió que presenciar el trágico accidente le causó serias angustias mentales que ascendían a la cantidad de $25,000.00. En vista de lo anterior, le solicitó al TPI que declarara "Ha Lugar" la "**Demanda**" y ordenara el pago de la cantidad mencionada.

El 17 de enero de 2020, el señor Morales Martínez y Universal presentaron su "**Contestación a la Demanda**" en la que negaron la mayoría de las alegaciones presentadas en su contra y resaltaron que el señor Figueroa Cancel asumió un riesgo irrazonable al quedarse trepado en un poste que estaba inclinado, sin estar amarrado debidamente. De igual manera, el 24 de febrero de 2020, el señor Rivera Bernard presentó su "**Contestación a la Demanda**" en la que expuso los mismos argumentos que los demás codemandados.

Más adelante, el 30 de enero de 2020, el TPI emitió una *Orden* en la que consolidó ambos casos. El 11 de enero de 2021, el foro apelado emitió una *Sentencia Parcial* a través de la cual acogió una solicitud de archivo por desistimiento voluntario con perjuicio de las causas de acción iniciadas en contra de Liberty y Chubb. Así las cosas, el 21 de mayo de 2021, las partes presentaron el correspondiente "**Informe Sobre Conferencia con Antelación a Juicio**". El 8 de marzo de 2024, los Apelados presentaron su "**Memorando de Derecho de la Parte Demandante sobre Valoración de Daños**" en el que citaron la jurisprudencia que entendían aplicable al presente caso para realizar la valoración de los daños alegados.

Finalmente, los días 5, 13 y 23 de febrero de 2024 se celebró el juicio en su fondo, durante el cual testificaron las siguientes personas: (1) el Sr. Luis Andrés

Colón, (2) el señor Hernández García, (3) el señor Figueroa Velázquez, (4) el Ing. Iván Baigés, (5) el señor Morales Martínez y (6) el Ing. Juan Díaz. El 11 de febrero de 2025, el TPI emitió una *Sentencia* en la que declaró "Ha Lugar" las *Demandas* interpuestas en contra de los Apelantes y concedió las siguientes indemnizaciones: (1) al señor Figueroa Cancel, la suma de $495,944.00, sujeta a una reducción del 40% por negligencia comparada para un total de $297,566.40; (2) al señor Figueroa Velázquez, la cantidad de $25,000.00 también con una reducción del 40% por negligencia comparada, resultando en $15,000.00; y (3) al señor Hernández García la suma de $10,000.00, menos un 40% de negligencia comparada para un total de $6,000.00.

Insatisfechos con lo anterior, los Apelantes presentaron el recurso que nos ocupa mediante el cual le imputaron al TPI la comisión de los siguientes errores:

**PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AI ADJUDICAR UN 60% DE NEGLIGENCIA A UNIVERSAL INSURANCE COMPANY Y SU ASEGURADO, A PESAR DE QUE LA CAUSA INMEDIATA DEL ACCIDENTE FUE LA DECISIÓN DE LA PARTE DEMANDANTE DE DESTENSAR EL CABLE SIN TOMAR MEDIDAS ADICIONALES DE SEGURIDAD, LO QUE DEBIÓ HABER LLEVADO A UNA DISTRIBUCIÓN DIFERENTE DE LA NEGLIGENCIA.**

**SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA VELOCIDAD DEL CAMIÓN CONDUCIDO POR MARCOS MORALES MARTÍNEZ FUE UN FACTOR DETERMINANTE EN LA OCURRENCIA DEL ACCIDENTE, IGNORANDO EL TESTIMONIO PERICIAL QUE ESTABLECIÓ QUE ERA IMPROBABLE DE DETECTAR LA ALTURA DEL CABLE.**

**TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER UNA COMPENSACIÓN EXAGERADA A WILFREDO FIGUEROA CANCEL POR CONCEPTO DE DAÑOS FÍSICOS Y ANGUSTIAS MENTALES. ADEMÁS, EL TPI INCURRIÓ EN DOBLE COMPENSACIÓN AL OTORGAR LA CUANTÍA DE DAÑOS EMOCIONALES CUANDO DICHA PARTIDA YA ESTABA COMPRENDIDA EN LAS PARTIDAS TOMADAS COMO REFERENTES PARA LOS DAÑOS FÍSICOS.**

**CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OTORGAR UNA PARTIDA ADICIONAL INDEPENDIENTE A LA DE DAÑOS FÍSICOS Y DAÑOS EMOCIONALES POR CONCEPTO DE IMPEDIMENTO, LO QUE RESULTA EN UNA DOBLE COMPENSACIÓN.**

**QUINTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CALCULAR LA COMPENSACIÓN POR PORCENTAJE DE IMPEDIMENTO DE MANERA EXCESIVA, CONCEDIENDO UNA CANTIDAD EXAGERADA E INJUSTIFICADA.**

**SEXTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER UNA COMPENSACIÓN EXAGERADA A WILFREDO FIGUEROA VELÁZQUEZ POR CONCEPTO DE ANGUSTIAS MENTALES, UTILIZANDO COMO REFERENCIA UN CASO SOBRE DAÑO A UN PADRE POR EL CUIDADO DE SU HIJO MENOR DE EDAD.**

El 27 de mayo de 2025, los Apelados comparecieron mediante escrito intitulado "**Alegato en Oposición a la Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.[2]

Dispone el Artículo 1802 del Código Civil de 1930, en su parte pertinente, que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR

---

[2] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1815 del Código Civil de 2020 dispone que: "La responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. Si unos actos u omisiones ocurrieron antes de la vigencia de este Código y otros ocurrieron después, la responsabilidad se rige por la legislación anterior". 31 LPRA sec. 11720. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Montalvo v. Cruz, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto**.** Torres Trumbull v. Pesquera, 97 DPR 338, 343 (1969); Estremera v. Inmobiliaria RAC, Inc., 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Parrilla Báez v. Ranger American of P.R., 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima del daño, aun cuando no sea la única causa del daño. Velázquez v. Ponce, 113 DPR 39, 45 (1982). Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo.

La prueba o evidencia circunstancial es intrínsecamente igual a la prueba o evidencia directa. Pueblo v. Pagán Santiago, 130 DPR 470, 479 (1992). Si un caso penal se puede probar mediante prueba circunstancial, cuanto más uno en la zona civil. E. L. Chiesa, Tratado de Derecho Probatorio, T. II, pág. 1238. No existe duda, pues, que, bajo nuestro derecho probatorio, la negligencia en los casos de daños es susceptible de ser probada, al igual que cualquier otro hecho en cualquier caso, mediante prueba circunstancial. Rodríguez v. Ponce Cement Corp., 98 DPR 201, 207-208 (1969).

A la luz de lo anterior, para que prospere una acción en daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto culposo u omisión negligente y, además, el elemento de causalidad. Art. 1802 del Código Civil, *supra*. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso, de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. Castro Ortiz v. Mun. de Carolina, 134 DPR 783, 793 (1993).

En el proceso de determinar quién es responsable de los daños alegados en una demanda, el Tribunal de Primera Instancia puede evaluar la evidencia presentada sobre las actuaciones de la parte reclamante y, a base de la doctrina de negligencia comparada o concurrencia de culpas, estimar el porciento de su participación en la causalidad de sus propios daños. Ahora bien, es norma reconocida en nuestra jurisdicción que la imprudencia del reclamante no opera como un eximente de responsabilidad, sino que lo que produce es la reducción de la indemnización. Art. 1802 del Código Civil, 31 LPRA sec. 5141.

"[S]irve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste." H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, vol. I, pág. 410. Es decir, la indemnización se individualizará conforme la proporción del descuido o negligencia. Quiñones López v. Manzano Pozas, 141 DPR 139, 176 (1996).

"'Así pues, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada es necesario analizar y **considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante**'". Íd. (énfasis suplido). Es por ello que "el juzgador debe determinar el monto de la compensación y el porciento de responsabilidad que corresponde a cada parte, restando de la compensación total

la fracción de responsabilidad correspondiente a la parte demandante". Colón Santos v. Coop. Seg. Múlt. P.R., 173 DPR 170, 178 (2008).

**B.**

En armonía con lo anterior, en los casos de reclamación de daños y perjuicios la indemnización requerida comprende el resarcimiento de los daños patrimoniales compuestos por el daño emergente y el lucro cesante, así como los daños morales, consistentes de los sufrimientos físicos, las angustias mentales, la pérdida de compañía, el afecto y la incapacidad. Cintrón Adorno v. Gómez, 147 DPR 576, 587 (1999). *Véase*, además, Brau del Toro, op cit., págs. 427-428. La partida de sufrimientos y angustias mentales tiene el propósito de compensar el dolor, los sufrimientos físicos y las angustias mentales que padece una persona como consecuencia de un acto culposo o negligente. Cintrón Adorno v. Gómez, *supra*, pág. 597. La dificultad en la evaluación de los daños es mayor con respecto a la compensación por angustias y sufrimientos mentales, pues éstos son intangibles. Se incluyen bajo este concepto diversas categorías de daños, tales como daño emocional, ansiedad, pérdida de afecto y otros daños similares de naturaleza intangible. B. Dobbs, The Law of Torts, Vol. 2, West Group. St. Paul Minn., 2001, pág. 821; *véase* además, Antonio J. Amadeo Murga, El Valor de los Daños en la Responsabilidad Civil, Tomo I, Editorial Esmaco, 1997, págs. 220 y subsiguientes. No obstante lo anterior, una pena pasajera no es suficiente, toda vez que deben probarse sufrimientos y angustias morales profundas. Moa v. E.L.A., 100 DPR 573, 587 (1972).

Por otra parte, la labor de estimar y valuar daños no se reduce a simples cálculos matemáticos. Rodríguez *et al*. v. Hospital *et al*., 186 DPR 889, 909 (2012). Se trata de un proceso complejo y desafiante, ya que no existen ecuaciones científicas de especificidad exacta que indiquen cómo se justiprecia el dolor y el sufrimiento humano. Herrera, Rivera v. S.L.G. Ramírez-Vicéns, 179 DPR 774 (2010); Vázquez Figueroa v. E.L.A., 172 DPR 150, 154 (2007); Nieves Cruz v. U.P.R., 151 DPR 150, 169-170 (2000). Al evaluar los daños en un caso, el juzgador debe basarse estrictamente en la prueba presentada, procurando siempre que la indemnización no se transforme en una industria ni afecte la economía, por ello se ha dicho que el deber de los jueces tiene el propósito de

conservar el sentido reparador y no punitivo que caracteriza a nuestro sistema jurídico. Agosto Vázquez v. F.W. Woolworth & Co., 143 DPR 76 (1997); Rivera v. Tiendas Pitusa, Inc., 148 DPR 695, 700 (1999). Es menester destacar que el proceso de valoración y compensación de daños intangibles como las angustias, la tristeza y el dolor, siempre estará teñida de cierto matiz de especulación. **La meta debe ser, pues, llegar al punto intermedio, esto es, ni exageradamente alta ni irrazonablemente baja**. Riley v. Rodríguez Pacheco, 119 DPR 762 (1987).

Debido a la complejidad de esta gestión, existe una norma que limita la intervención de los foros apelativos fundada en criterios de estabilidad y deferencia a los tribunales de instancia. Según dicha norma, los foros revisores deben abstenerse de modificar la valoración de la prueba y la adjudicación de daños que un tribunal de instancia haya emitido, **salvo en aquellos casos en los que la suma concedida sea ridículamente baja o exageradamente alta.** Santiago Montañez v. Fresenius Medical, 195 DPR 476, 490 (2016); Rodríguez *et al.* v. Hospital *et al.*, *supra*, págs. 909-910; Albino v. Ángel Martínez, Inc., 171 DPR 457, 486-487 (2007). Ello responde a que los jueces de instancia se encuentran en mejor posición que los tribunales apelativos para estimar los daños, toda vez que éstos son los que tienen relación directa con la prueba presentada. Rodríguez *et al.* v. Hospital *et al*., *supra*, pág. 909; Blás v. Hosp. Guadalupe, 146 DPR 267, 339 (1998)*;* Rodríguez Cancel v. A.E.E., 116 DPR 443, 451 (1985). Asimismo, cabe enfatizar que resulta un principio básico en nuestro ordenamiento jurídico que, en la apreciación de la prueba desfilada ante el foro de instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 42.2 de Procedimiento Civil la cual, en lo pertinente, dispone que:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.32 LPRA Ap. V, R. 42.2

Esto es, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic

Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, 153 DPR 280. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Así, en cuanto a la valoración o cuantificación del daño, dicho cometido corresponde, inicialmente, al juzgador de los hechos, quien debe ejercer su discreción de manera prudente, juiciosa y razonable, basándose exclusivamente en la prueba presentada y guiado por un sentido de justicia y conciencia humana. S.L.G. v. F.W. Woolworth & Co., 143 DPR 76, 81 (1997); Concepción Guzmán v. A.F.F., 92 DPR 488 (1965). Recordemos que no existen dos casos

completamente idénticos, ya que cada uno depende de sus circunstancias particulares al momento de valorizar los daños. Sucn. Mena Pamias *et al.* v. Meléndez *et al.*, 212 DPR 758, 770 (2023); Santiago Montañez v. Fresenius Medical, *supra*, pág. 784; Rodríguez *et al.* v. Hospital *et al.*, *supra*, pág. 943. El daño a ser compensado no puede subvalorarse meramente por el carácter especulativo que conlleve necesariamente el cómputo. Por tanto, los tribunales deben buscar una proporción razonable entre el daño causado y la indemnización concedida, de modo que la adjudicación sea razonablemente balanceada, es decir, ni extremadamente baja ni desproporcionadamente alta. Blás v. Hosp. Guadalupe*, supra*, pág. 339.

Así pues, en el ejercicio de dicha tarea, los tribunales deben examinar las cuantías otorgadas en casos similares resueltos anteriormente, ya que éstas sirven de punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el Tribunal de Primera Instancia. Santiago Montañez v. Fresenius Medical, *supra*, pág. 785-786. Igualmente, se debe ajustar la compensación otorgada al valor presente, tomando en consideración el índice de precios al consumidor en ambos períodos. Rodríguez *et al.* v. Hospital *et al.*, *supra*, pág. 910-911. Además, los tribunales deben especificar qué casos tomaron como referencia y explicar cómo las cuantías concedidas se ajustan en esos precedentes, y se comparan y ajustan al caso ante su consideración. Santiago Montañez v. Fresenius Medical, *supra*, pág. 493.

No obstante lo anterior, la decisión que se emita en un caso específico con relación a la valoración y estimación de daños no puede ser considerada como precedente obligatorio para otro caso, sino que sólo puede servir como guía o punto de inicio en casos parecidos. Toro Aponte v. E.L.A., 142 DPR 464, 478 (1997). Es indudable que la cuantificación de los daños siempre implica cierto grado de especulación; sin embargo, el juez debe guiarse por la razonabilidad y prudencia al estimar y valorar los daños que ha sufrido una parte. Urrutia v. A.A.A., *supra*, págs. 647-648. **En este sentido, una compensación alineada con la otorgada en casos previos similares se considera razonable en principio y sólo será modificada si las circunstancias específicas del caso ante el Tribunal así lo requieren**. Herrera, Rivera v. S.L.G. Ramírez-

Vicéns, *supra,* pag. 791. Sin embargo, el Tribunal Supremo ha sido enfático en que la utilización de precedentes anteriores como referencia en la ardua tarea de cuantificar daños no implica que éstos sean obligatorios a la hora de realizar dicha encomienda. Sucn. Mena Pamias *et al.* v. Meléndez *et al.*, *supra*, pág. 771.

**Ahora bien, quien solicite una modificación en la cuantía otorgada tiene la carga de probar su necesidad.** Meléndez Vega v. El Vocero de PR, 189 DPR 123, 203 (2013). Así pues, la parte que impugne la indemnización concedida por el foro de instancia debe demostrar la existencia de circunstancias que justifiquen dicho cambio. Simplemente alegar que la compensación es inadecuada no basta para que los foros apelativos la modifiquen. Por lo tanto, sólo cuando se acredite que la cuantificación de los daños es irrazonable, es que procede la revisión por los foros apelativos. Albino v. Ángel Martínez*, Inc.*, *supra,* pag. 487.

Asimismo, el derecho a ser compensado no puede ser derrotado meramente porque el cálculo pueda tener cierto grado de especulación. Lo esencial es que la compensación otorgada se base en la prueba y cumpla con la función reparadora que persigue nuestro ordenamiento. Rivera v. Tiendas Pitusa, Inc., *supra*, pag. 700. En línea con ello, nuestro máximo foro judicial ha enfatizado que, aunque la valoración de daños puede generar distintos criterios, esta tarea debe recaer, en la medida de los posible, en el juzgador de los hechos, dentro de un análisis de razonabilidad. Meléndez Vega v. El Vocero de PR, *supra*, pag. 204. De no existir algún error manifiesto, parcialidad o prejuicio en tal apreciación, no corresponde nuestra intervención. Íd.

**III.**

En el presente caso, los Apelantes nos solicitaron que revoquemos la *Sentencia* del TPI en la que se declaró "Ha Lugar" las *Demandas* interpuestas por los Apelados.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de manera conjunta en la discusión. En síntesis, los Apelantes argumentan que el TPI erró al: (1) adjudicar un 60% de negligencia a Universal, (2) concluir que la velocidad del camión conducido por el señor Morales Martínez fue un factor determinante, (3) conceder una compensación exagerada

al señor Figueroa Cancel, (4) otorgar una partida adicional e independiente a la de daños físicos y daños emocionales por concepto del porcentaje de impedimento, (5) calcular la compensación por porcentaje de impedimento de manera excesiva y (6) al conceder una compensación exagerada al señor Figueroa Velázquez por concepto de angustias mentales.

Del expediente ante nuestra consideración se desprende que, el 1 de marzo de 2019, el señor Figueroa Cancel se encontraba sobre un poste instalando líneas de servicio telefónico de la compañía Claro en la Carretera Núm. 116, Km. 8.17 del Municipio de Lajas. Mientras tanto, el señor Morales Martínez conducía un camión de arrastre por la zona y, al pasar, movió el cable que cruzaba la vía, lo que provocó que el señor Figueroa Cancel cayera desde aproximadamente una altura de 25 pies. Como consecuencia de lo anterior, el 26 de febrero de 2019, el señor Figueroa Cancel, junto a su padre, el señor Figueroa Velázquez presentaron una "**Demanda**" sobre daños y perjuicios en contra de los Apelantes. Mediante la misma, el señor Figueroa Cancel solicitó una indemnización por los daños físicos y emocionales sufridos, mientras que su padre reclamó compensación por el daño emocional causado. De igual manera, más adelante, el señor Hernández García, compañero de trabajo del señor Figueroa Cancel que se encontraba el día de los hechos laborando con éste, presentó una "**Demanda**" por las angustias mentales que le causó presenciar el accidente.

Tras un trámite procesal extenso, incluyendo la celebración del juicio en su fondo, el 11 de febrero de 2025 el TPI emitió una *Sentencia* en la que declaró "Ha Lugar" las *Demandas* incoadas en contra de los Apelantes y otorgó las siguientes indemnizaciones, aplicando una reducción del 40% por negligencia comparada: (1) al señor Figueroa Cancel, la cantidad de $297,566.40; (2) al señor Figueroa Velázquez, la suma de $15,000.00; y (3) al señor Hernández García, la cuantía de $6,000.00.

Conforme hemos reseñado en los acápites anteriores, el Código Civil derogado disponía que quien mediante acción u omisión cause daño a otro, cuando intervenga culpa o negligencia está obligado a reparar dicho daño. 31 LPRA sec. 5141. En consecuencia, resulta imprescindible que, en toda controversia sobre daños y perjuicios extracontractuales, el promovente

demuestre que la negligencia del demandado fue la causa más probable del perjuicio sufrido. Parrilla Báez v. Ranger American of P.R., *supra*, pág. 270. Ahora bien, es norma reiterada que cuando la imprudencia del reclamante abona a la ocurrencia de los daños, es menester determinar el porcentaje de su participación en la causalidad reclamada. No obstante, en la realización de dicha tarea, el juzgador de instancia está en la obligación de **considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante**. Quiñones López v. Manzano Pozas, *supra*, pág. 176. Por otro lado, cabe destacar que la tarea de estimar y valorizar daños resulta compleja, ya que no existen fórmulas científicas exactas para cuantificar el dolor y el sufrimiento humano. Herrera, Rivera v. S.L.G. Ramírez-Vicéns, *supra*, pág. 774. Por ello, la valoración y compensación de daños intangibles, tales como la angustia, la tristeza y el dolor, está siempre teñida por un grado de especulación. Íd.

**Asimismo, en lo que respecta a la revisión de las determinaciones del TPI, los foros apelativos debemos abstenernos de modificar la valoración de la prueba y la adjudicación de daños realizada por el foro primario, salvo cuando la suma asignada resulte absurdamente baja o exageradamente alta**. Santiago Montañez v. Fresenius Medical, *supra*, pág. 490. Ello responde a que los jueces de instancia se encuentran en mejor posición que los tribunales apelativos para evaluar los daños, ya que son quienes tienen contacto directo con la prueba presentada. Rodríguez *et al.* v. Hospital *et al.*, *supra*, pág. 909. Por lo tanto, sólo procede la revisión por parte de los foros apelativos cuando se acredite que la cuantificación de los daños es irrazonable. Albino v. Ángel Martínez, Inc., *supra*, pág. 487. Ahora bien, para ello es necesario que quien recurra ante los tribunales apelativos tiene el peso de demostrar la necesidad de que se efectúe una modificación a la cuantía otorgada por el juzgador de instancia. Meléndez Vega v. El Vocero de PR, *supra*, pág. 203.

Tras un análisis minucioso del expediente ante nuestra consideración, incluyendo las *Demandas* interpuestas en contra de los Apelantes y la transcripción de la prueba oral (TPO), hemos arribado a la conclusión de que el TPI no incurrió en error manifiesto, parcialidad o prejuicio en su apreciación de la

prueba ni en la adjudicación de los daños. Nótese pues, que la prueba desfilada en juicio demostró de manera clara que los Apelados sufrieron daños que se ajustan a la compensación asignada. Dicho resarcimiento no resultó ser ni excesivamente bajo ni desproporcionadamente alto, sino que guardó relación con la naturaleza de los agravios demostrados. Asimismo, dadas las circunstancias particulares del caso y la prueba que desfiló en el juicio, tampoco creemos que el foro a quo se equivocó al concluir que el porciento de negligencia que aportaron los Apelantes en la ocurrencia de los daños fue un 60%. Nos explicamos.

De la TPO se desprende que el señor Figueroa Cancel sufrió graves lesiones, incluyendo múltiples fracturas en la muñeca, cadera, cresta iliaca y órbita del ojo derecho, además de golpes en varias partes del cuerpo y sangrado en la cara y oído derecho. Debido a la gravedad de su situación, fue trasladado en ambulancia aérea al Centro Médico de Rio Piedras, donde estuvo hospitalizado 14 días, algunos en intensivo y bajo cuidado de trauma. De igual manera, se le realizaron estudios de rayos X, tomografías y resonancias, además de cirugías con fijación de placas y tornillos en la cadera y muñeca derecha. No podemos pasar por alto el hecho de que su recuperación fue difícil y dolorosa, requiriendo medicación fuerte para el dolor y la depresión y alrededor de 40 sesiones de terapia física. Durante dos meses estuvo postrado en cama, sin poder caminar ni valerse por sí mismo, necesitando asistencia para alimentarse, bañarse y moverse. Las secuelas de dicho accidente incluyen movilidad reducida en la mano derecha, cicatrices, dolor crónico en varias zonas del cuerpo y depresión severa. Como consecuencia del mencionado evento traumático, no pudo reincorporarse al trabajo y fue incapacitado por la Administración del Seguro Social.[3] Todos estos daños ocurrieron, en gran medida, debido a la manera negligente en que el señor Morales Martínez conducía por la vía de rodaje mientras el señor Figueroa Cancel llevaba a cabo trabajos en un poste de la carretera.

Basado en lo anterior, el foro apelado le concedió la suma de $495,944.00 por los daños físicos sufridos y angustias mentales, menos el 40% de la negligencia desplegada por éste en la ocurrencia de los daños reclamados, cuantía que fue ajustada al valor presente. Para fundamentar dicha cuantía, el

---

[3] *Véase*, Transcripción de la prueba oral, págs. 166-205.

Tribunal recurrió a varios precedentes de nuestro Tribunal Supremo, los cuales detallamos a continuación.

En Quiñones López v. Manzano Pozas, *supra*, el demandante sufrió una fractura en el fémur que requirió cirugía con placas y tornillos, así como un extenso periodo de rehabilitación, lo que afectó su movilidad y calidad de vida. En Corchado v. Fernández, 88 DPR 100 (1963), se adjudicó compensación por una fractura en el brazo derecho con deformidad permanente, limitaciones funcionales y dolor persistente. Ambos casos sirvieron de referencia para valorar las lesiones físicas, cirugías y el proceso de recuperación del señor Figueroa Cancel. Para el componente de impedimento físico, consideró el caso de un panel hermano de este Tribunal de Apelaciones en Vallejo Romeu v. Integrand Assur. Co., KLAN202100027, en el que se otorgó una suma específica por cada porciento de incapacidad fisiológica general. Finalmente, en cuanto a las angustias mentales, el juzgador de instancia se apoyó en el caso de Ortiz De Jesús v. Municipio de Carolina, caso núm. KLAN202200742 y en Vallejo Romeu v. Integrand Assur. Co, *supra*, en los que se reconocieron los daños emocionales profundos experimentados por los demandantes, a raíz de lesiones físicas severas que alteraron significativamente su vida cotidiana.

Por otro lado, la prueba demostró que el señor Figueroa Velázquez experimentó afectaciones emocionales significativas. Durante un periodo prolongado, se ocupó del cuidado del señor Figueroa Cancel, incluyendo su alimentación, higiene, asistencia para usar el baño y acompañamiento a consultas médicas. Aunque no padeció daños físicos, sí experimentó preocupación y angustia emocional ante el delicado estado de salud de su hijo. Esta situación le provocó una gran inquietud, producto de la constante incertidumbre respecto a la condición médica del señor Figueroa Cancel.[4]

Para calcular la compensación por los daños emocionales sufridos por éste, el TPI se basó específicamente en el caso de un panel hermano de este Tribunal de Oliver Torres v. Delgado Hernández, caso núm. KLAN201501110, el cual presenta similitudes con el caso ante nuestra consideración. Al igual que en el presente caso, un padre cuidó durante un largo período a su hijo, quien

---

[4] *Véase*, Transcripción de la prueba oral,, págs. 136-148.

enfrentaba una condición de salud grave. En ese caso, un panel hermano de este Tribunal confirmó la cantidad de $20,000.00 que el foro de instancia había otorgado por daños emocionales, lo que, ajustado al valor presente, equivale a $23,243.24.

Por su parte, el señor Hernández García experimentó afectaciones emocionales notables como resultado directo del incidente. El tener que presenciar al señor Figueroa Cancel tendido en el suelo y con el rostro ensangrentado, le generó un impacto emocional tan fuerte que pensó que había fallecido. Dicha experiencia le provocó ansiedad, síntomas depresivos y lo llevó a buscar tratamiento psicológico a través de la CFSE. Además, debido a que sus funciones laborales incluían tareas en altura, similares al contexto del accidente, solicitó acomodo en su trabajo y se ausentó durante diez (10) días.[5] Para sustentar la compensación otorgada al señor Hernández García, el juzgador de instancia también se basó en el caso de Oliver Torres v. Delgado Hernández, *supra*, el cual resultó ser una referencia importante para la cuantificación de la indemnización por los perjuicios sufridos.

Como puede apreciarse, las sumas concedidas por el foro *a quo* no adolecen de desproporción alguna, pues no fueron excesivas ni insuficientes, sino que responden a un examen cuidadoso, objetivo y razonable de los daños y perjuicios probados. Dicha determinación se sustentó en la prueba desfilada en juicio y en la normativa jurisprudencial aplicable, la cual reconoce que la valoración de daños, aunque inherentemente especulativa, es un ejercicio indispensable para cumplir con el fin reparador que persigue nuestro ordenamiento jurídico. A tales efectos, el TPI se apoyó en casos que compartían circunstancias fácticas análogas al presente caso, lo que permitió fijar un marco de referencia coherente para la determinación de los daños objeto de esta controversia.

En este sentido, el foro de instancia destacó que la velocidad en la que conducía el señor Morales Martínez fue un factor determinante en la causa próxima de los daños. La prueba demostró también que los Apelados pudieron haber tomado medidas preventivas, como haber colocado un abanderado en el área o haber cerrado las zonas mientras realizaban el trabajo adicional, tal como

---

[5] *Véase*, Transcripción de la prueba oral, págs. 52-95.

lo hicieron al instalar los cables. Lo anterior, fundamentado en la prueba presentada, aseguró una resolución justa y proporcionada, alineada con la realidad económica del momento en que ocurrió el evento y en conformidad con los principios establecidos por nuestra jurisprudencia. Sobre este particular, coincidimos con el foro apelado en cuanto a la adjudicación del porcentaje de negligencia que abonó en la ocurrencia de los daños probados que le fue adjudicada a las actuaciones culposas de los Apelantes y entendemos que la misma se ajusta a la prueba desfilada durante el juicio. En virtud de ello, consideramos que no estamos en posición de intervenir, ya que no se ha identificado un error manifiesto ni ningún indicio de pasión, prejuicio o parcialidad, o que la determinación del juez de instancia haya constituido un error manifiesto. En lo que respecta a la valoración o cuantificación de los daños, colegimos que el TPI, al ejercer su discreción, actuó de manera prudente, juiciosa y razonable, basándose exclusivamente en la prueba presentada y guiado por un sentido de justicia y conciencia humana.

Habiendo adjudicado las controversias sobre la apreciación de la prueba y la valoración de los daños efectuada por el TPI, corresponde que evaluemos los planteamientos esgrimidos sobre la alegada doble compensación que expusieron los Apelantes. Veamos.

En esencia, los Apelantes sostienen que el juzgador de los hechos incidió al conceder una partida por daños físicos y angustias mentales, cuando esta última partida estaba incluida dentro de las cuantías por daños físicos. Igualmente, sostienen que el TPI concedió una doble compensación al otorgar una partida adicional por concepto del porcentaje de impedimento.

Específicamente, sostienen que, en el caso de Quiñones López v. Manzano Posas, *supra*, el foro de instancia concedió una partida por los daños físicos y angustias mentales ascendentes a $151,000.00 y que el TPI utilizó esa cantidad englobada para calcular los daños físicos sufridos por el señor Figueroa Cancel, lo cual resulta en una doble compensación. No obstante, a poco que examinemos las expresiones del Tribunal Supremo en dicho caso notamos que la partida de los $151,000.00 otorgada solo correspondía a los daños físicos sufridos por el demandante y no comprendían las angustias mentales que se le reconoció

mediante Sentencia. De hecho, en dicha ocasión, además de los $151,000.00, se le concedió la cantidad de $25,000.00 por sufrimientos y angustias mentales.[6]

En lo que respecta al argumento relacionado con el caso de Corchado v. Fernández Carballo, *supra*, los Apelantes intentan inducir a error a este Tribunal al argumentar que la cuantía otorgada por el entonces Tribunal Superior ascendente a $10,000.00 incluía los daños físicos y angustias mentales sufridos por el demandante. No obstante, de ninguna parte de la Opinión del máximo foro judicial se desprende que dicha cantidad comprendía daños físicos y emocionales. Todo lo contrario, surge claramente que los daños tomados en consideración eran únicamente daños físicos.

En vista de todo lo anterior, carecen de validez los planteamientos esgrimidos por los Apelantes a los efectos de que erró el TPI al conceder partidas separadas por concepto de los daños físicos y angustias mentales cuando en los anteriores precedentes las cuantías concedidas contemplaban ambas partidas.

Finalmente, en lo que respecta al planteamiento de doble compensación por el TPI haber concedido una partida por daños físicos y otra correspondiente al por ciento de impedimento, debemos destacar que dicha teoría se fundamenta en unas expresiones efectuadas por un panel hermano en el caso de Lebrón Correa y otros v. Caribbean Alliance Ins. Co., KLAN201200909. Al evaluar las mismas notamos que, en aquella ocasión, se concluyó que ambas sumas estaban inextricablemente vinculadas, puesto que no surgía de la Sentencia del foro primario "un pronunciamiento expreso que arroj[ara] luz sobre el proceso deliberativo que consideró la Juzgadora de los hechos para asignar" dos compensaciones separadas.[7] Sin embargo, esa no es la situación que presenta el caso que nos ocupa. Al examinar la *Sentencia* apelada, observamos que el juzgador de instancia efectuó un análisis separado para adjudicar la cuantía de los daños por concepto del impedimento que se le adjudicó al señor Figueroa Cancel. Por lo que es evidente que lo ocurrido en Lebrón Correa y otros v. Caribbean Alliance Ins. Co., *supra*, es distinguible del análisis efectuado por el TPI en el caso de autos.

---

[6] Quiñones López v. Manzano Posas, *supra*, pág. 180.
[7] *Véase*, Lebrón Correa y otros v. Caribbean Alliance Ins. Co., KLAN201200909, págs. 20-21.

Asimismo, los Apelantes argumentan que, conforme lo decidido por este Tribunal en el caso de <u>Cruz Falcón v. Agresar Jiménez y otros</u>, KLAN201501098, procedía dejar sin efecto la compensación otorgada por concepto del porcentaje por impedimento, pues la misma estaba subsumida en la cuantía concedida por los daños físicos. Específicamente, cita la porción de dicha Sentencia que expone lo siguiente: "el 6% de impedimento de las funciones fisiológicas generales está subsumido en los daños físicos, por lo que determinamos que no procede la partida de $30,000.00 que se concedió por este concepto".[8] No tiene razón. Nos explicamos.

Según la doctrina, el concepto de incapacidad es una partida del daño moral que implica la pérdida del disfrute de las actividades cotidianas de la vida. A.J. Amadeo Murga, <u>El Valor de los Daños en la Responsabilidad Civil</u>, 2da Ed., Librería Bosch S.L., 2012, pág. 81. Bajo esta premisa, sostiene el tratadista Amadeo Murga que la privación del disfrute de estas actividades sociales, culturales y espirituales son **separadas y nada tienen que ver con las angustias mentales que pudo haber sufrido el damnificado**. <u>Íd</u>. Por tanto, tomando como base lo anterior, nada impide que los tribunales de primera instancia puedan conceder cuantías diferentes por concepto de daños físicos, angustias mentales y otra por el porcentaje de incapacidad.

Desde esa perspectiva, cuando analizamos la *Sentencia* que nos ocupa, notamos que el TPI efectuó un análisis diferente para adjudicar la cuantía que concedió por el impedimento que el señor Figueroa Cancel padece. Siendo ello así, concluimos que no incidió el foro *a quo* al conceder partidas diferentes por dichos conceptos. Los autos reflejan que el juzgador de los hechos basó sus conclusiones de derecho en la prueba presentada y en las circunstancias particulares del caso que nos ocupa, por lo que no procede que intervengamos con la *Sentencia* cuya revocación nos invitan los Apelantes.

Procede, por consiguiente, la confirmación del dictamen apelado.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

---

[8] <u>Cruz Falcón v. Agresar Jiménez y otros</u>, *supra*, pág. 15.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones